[Cite as *Johnson v. Am. Italian Golf Assn. of Columbus*, 2018-Ohio-2100.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Georgia Johnson, et al., | : | |
| Plaintiffs-Appellants, | : | |
| v. | : | No. 17AP-128 |
| | | (C.P.C. No. 15CV-11180) |
| American Italian Golf Association of Columbus d/b/a Rivera Country Club, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

---

# D E C I S I O N

### Rendered on May 31, 2018

---

**On brief:** *Isaac Wiles Burkholder & Teetor, LLC, Michael L. Close, Andrew N. Yosowitz,* and *Dale D. Cook,* for appellants. **Argued:** *Dale D. Cook.*

**On brief:** *Raymond H. Decker, Jr.,* for appellee. **Argued:** *Regan Tirone.*

---

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiffs-appellants, Georgia Johnson and Robert W. Johnson[1] (collectively "the Johnsons"), appeal from a decision of the Franklin County Court of Common Pleas entered on January 26, 2017, granting the motion for summary judgment of defendant-appellee, American Italian Golf Association of Columbus d/b/a Riviera Country Club ("the association"), against the Johnsons' claims for damages. Because we find that genuine issues of material fact exist with regard to the evidence considered by the trial court on summary judgment, we reverse its decision and remand this matter for further proceedings.

---

[1] Because the appellants share the same last name, for ease of reference we refer to them by their first name.

## I.  FACTS AND PROCEDURAL BACKGROUND

{¶ 2}   Georgia was attending a golfing event at the association's property, Riviera Country Club ("Riviera"), on July 10, 2015, when she tripped and fell over a concrete curb between a grass surface and an artificial turf surface, suffering a right proximal humerus fracture, which required two surgeries to repair.  It was Georgia's first time at Riviera, and she claimed she did not see the curb because it was hidden by overgrown grass.  Moreover, she testified that, as an experienced golfer, she would never have anticipated a concrete curb being in that location.

{¶ 3}   On December 11, 2015, the Johnsons filed a complaint in the Franklin County Court of Common Pleas alleging that Georgia was a business invitee at Riviera when she tripped over the curb while walking to the driving range.  The Johnsons asserted that the curb "was a hazard that was not open, obvious or observable."  (Dec. 11, 2015 Compl. at ¶ 6.)  The Johnsons alleged that the association was negligent because it knew of the hazard, but had failed to alleviate, remove, or post warnings about it, creating unreasonable risk of harm to patrons.  The Johnsons claimed that, as a direct and proximate cause of the association's negligence, Georgia incurred serious injuries and lost earnings.  Additionally, Robert claimed loss of care, companionship, consortium, services, and society of his wife, Georgia.

{¶ 4}   As part of the discovery process, the association deposed Georgia on September 23, 2016.  The association's counsel asked Georgia to described the fall, and she testified as follows:

> I stepped and I couldn't--all I saw was grass and Astroturf. I saw nothing else but grass and Astroturf, and in a golfer's mind, when you see grass and Astroturf, there is a rubber mat under that to soften the blow for the clubs, okay. Never in my wildest dreams would I have dreamed there was concrete under the Astroturf.
>
> My foot stepped, so my foot stepped and it stepped like this (indicating). And because there was a deep, deep step that I did not see, my foot, when it hit like this, when it did that, because of the weight--when I stepped, it propelled me forward. This shoulder hit the other edge of the Astroturf and that's how it broke in four places (indicating). It kind of hit a line and shattered and then it threw me back. It's hard to explain.

(Sept. 23, 2016 Georgia Johnson Dep. at 53.)

{¶ 5} On October 28, 2016, the association filed a motion for summary judgment, contending the Johnsons' claims fail because the curb was open and obvious. In support of its motion, the association filed the deposition transcript of Georgia and several photographs that had been admitted as deposition exhibits. The association claimed that the photographs it provided (Georgia's deposition exhibits A through H) "clearly show a difference in elevation that is visible to the naked eye between the grass and the turf surface." (Oct. 28, 2016 Def.'s Mot. for Summ. Jgmt. at 6.) The association argued that, had Georgia been paying attention, "she would have noticed the concrete slab itself protruding from underneath the turf." *Id.* The association continued:

> What makes the elevation more obvious is that, even if the grass was in fact overgrown in places at the time of the fall as the Plaintiff alleges, one can easily see in the photos of the injury site that there is the presence of the grass, a grey material, followed by a thick layer of green artificial turf overlaying that grey material. The thickness of both materials, combined with the fact that they contrast in color, would lead a reasonable person to observe some difference in elevation despite whether or not they were actually aware it was concrete or any other surface on which the turf was mounted. * * * [O]ne can conclude that a reasonable person would have been able to observe the existence of an elevation difference in the exercise of reasonable care an [sic] could take reasonable precautions for their own safety.

Id.

{¶ 6} On November 28, 2016, the Johnsons filed a memorandum contra asserting the curb was obscured. They supported their memorandum contra with Georgia's affidavit, as well as three "true and accurate photographs of the artificial turf and the surrounding grass as it existed on July 10, 2014." (Georgia Johnson Aff. at ¶ 9, attached to Nov. 28, 2016 Pls.' Resp. in Opp.) Georgia testified that she had arrived at Riviera at approximately 7:45 a.m., took care of some preliminary matters and walked from the parking lot to the driving range area. She testified that, between the parking lot and the area of the driving range where golfers were warming up, there was a strip of artificial turf which appeared to be level with the surrounding grass. She continued in her affidavit:

> 11. When I went to cross the artificial turf, my foot stepped on the edge of an obscured concrete curb that could not be seen due to overgrown grass;

12. I tripped over the hidden curb, fell forward, and broke my right shoulder;

13. I later learned that the curb was several inches deep; however, as the pictures make clear, as one approaches the artificial turf, the turf and grass appear to be level. The concrete curb underneath the turf was covered by weeds and grass and was not visible to me;

14. Before this incident, I played golf five to six times per week. I have played dozens of different golf courses. I have never seen a concrete curb like the one in this case supporting artificial turf on a golf course driving range;

15. Indeed, other than as part of a cart path, I have never seen a concrete curb like the one depicted in [her three photographs] in the middle of a driving range.

*Id.* at ¶ 11-15.

{¶ 7} The Johnsons asserted that photographs provided by the association with its motion for summary judgment also showed that the curb was obscured. They claimed that the association owed a duty to protect invitee Georgia from concealed hazards. They argued that there existed a genuine issue of fact as to whether the association breached that duty, making summary judgment inappropriate.

{¶ 8} The association filed a reply in support of its motion for summary judgment on December 5, 2016.

{¶ 9} By decision entered January 26, 2017, the trial court granted the association's motion for summary judgment. The trial court stated in pertinent part as follows:

Defendant moves the Court for summary judgment, submitting that Plaintiffs' claims fail because the curb is open and obvious. Plaintiff counters that the curb was obscured. Under Ohio law, there is no duty to warn invitees of or remove an open and obvious hazard. *Armstrong v. Best Buy*, 99 Ohio St.3d 79, 80, 2003-Ohio-2573, 788 N.E.2d 1088. In support of its motion, Defendant relies upon photos of the curb which clearly show a difference in elevation that is visible to the naked eye between the grass and the turf. (Plaintiff Depo. Exs. A-H). The Court further notes that the curb itself is plainly visible in the photos Plaintiff submitted with its Memorandum Contra.

> As such, the Court finds that Defendant was under no duty to warn Johnson of the curb's existence and finds Defendant's motion for summary judgment well taken.

(Jan. 26, 2017 Decision and Entry at 3.)

{¶ 10} The Johnsons now appeal the judgment of the trial court granting summary judgment.

## II. ASSIGNMENT OF ERRORS

{¶ 11} The Johnsons present for our review two assignments of error:

> 1. The trial court erred in granting summary judgment as there were genuine issues of material fact as to whether the hazard was open and obvious.
>
> 2. The trial court in basing its analysis on some unspecified photos and ignoring other photos and testimonial evidence improperly weighed the evidence in considering the motion for summary judgment.

## III. LAW AND DISCUSSION

### A. Standard of Review

{¶ 12} The trial court resolved the Johnsons' complaint by summary judgment after orders were entered governing discovery between the parties.

> Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of ComGeorgia* (1997), 123 Ohio App. 3d 158, 162, 703 N.E.2d 841. When reviewing a trial court's decision granting summary judgment, we conduct an independent review of the record, and the appellate court "stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App. 3d 100, 103, 701 N.E.2d 383.

*Rose v. Ohio Dept. of Rehab. & Corr.*, 173 Ohio App.3d 767, 2007-Ohio-6184, ¶ 18 (10th Dist.).

{¶ 13} Thus, when reviewing an appeal of an order granting a motion for summary judgment, this Court uses the same standard of review as the trial court. *Freeman v. Brooks*, 154 Ohio App.3d 371, 2003-Ohio-4814, ¶ 6 (10th Dist.), citing *Maust v. Bank One of Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992), *jurisdictional motion overruled*, 66 Ohio St.3d 1488 (1993). And an appellate court's review of a summary judgment disposition is independent and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993). Thus, in determining whether a trial court properly granted a summary judgment

motion, an appellate court must review the evidence according to the standard set forth in Civ.R. 56, as well as according to applicable case law. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992); *Cooper v. Red Roof Inns, Inc.*, 10th Dist. No. 00AP-876 (Mar. 30, 2001).

{¶ 14} Civ.R. 56(C) requires that:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Civ.R. 56 has been described as a means to facilitate the early assessment of the merits of claims, to foster pre-trial dismissal of meritless claims, and to define and narrow issues for trial. *Telecom Acquisition Corp. I v. Lucic Ents.*, 8th Dist. No. 102119, 2016-Ohio-1466, ¶ 92. *See also Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 170 (1997) (Cook, J., concurring in part and dissenting in part). As such, summary judgment is a procedural device designed to promote judicial economy and to avoid needless trials.

> "The goal of a motion for summary judgment is to narrow the issues in a case to determine which, if any, should go to trial. ' "The purpose of summary judgment is not to try issues of fact, but is, rather, to determine whether triable issues of fact exist." ' *State ex rel. Anderson v. The Village of Obetz*, 10th Dist. No. 06AP-1030, 2008-Ohio-4064, ¶ 64, quoting *Lakota Local School Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637, 643, 671 N.E.2d 578 (1996) (citations omitted.)"

*Erickson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-74, 2017-Ohio-1572, ¶ 19, quoting *Thevenin v. White Castle Mgmt. Co.*, 10th Dist. No. 15AP-204, 2016-Ohio-1235, ¶ 45 (Brunner, J., concurring.). Thus, a party seeking summary judgment on the grounds that a nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and must identify those parts of the record which demonstrate the absence of a genuine issue of material fact on the elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996).

{¶ 15} If the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party does not respond, summary judgment, if otherwise appropriate, shall be entered against the nonmoving party. *Id.* The nonmoving party may not rest on the mere

allegations or denials of his or her pleadings, but must respond with specific facts showing there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293.

## B. First Assignment of Error

{¶ 16} The Johnsons argue that the trial court abused its discretion in granting summary judgment because there were genuine issues of material fact as to whether the alleged hazard was open and obvious.

> [T]he open-and-obvious doctrine * * * states that a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious. *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 Ohio Op. 2d 96, 233 N.E.2d 589, paragraph one of the syllabus. The rationale underlying this doctrine is "that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 644, 1992 Ohio 42, 597 N.E.2d 504. A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474; *Jackson v. Kings Island* (1979), 58 Ohio St.2d 357, 12 O.O.3d 321, 390 N.E.2d 810. When applicable, however, the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims.

*Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5. *See also Thompson v. Ohio State Univ. Physicians, Inc.*, 10th Dist. No. 10AP-612, 2011-Ohio-2270, ¶ 12. We have uniformly recognized "that the existence and obviousness of an alleged danger requires a review of the underlying facts." *Freiburger v. Four Seasons Golf Ctr., L.L.C.*, 10th Dist. No. 06AP-765, 2007-Ohio-2871, ¶ 11, citing *Schmitt v. Duke Realty*, 10th Dist. No. 04AP-251, 2005-Ohio-4245, ¶ 10; *Terakedis v. Lin Family Ltd. Partnership*, 10th Dist. No. 04AP-1172, 2005-Ohio-3985, ¶ 10. The factual analysis involved in finding a danger to be open and obvious is "whether the danger was free from obstruction and readily appreciated by an ordinary person." *Freiburger* at ¶ 11. If there is no genuine issue as to these material facts, that is, if reasonable minds could not differ about them, then, as a matter of law, a court may decide that an alleged hazard is open and obvious. *Id.* But if reasonable minds could differ about whether the danger was free from obstruction and

readily appreciated by an ordinary person, a jury should resolve these factual issues before the court determines whether the landowner has a duty to the business invitee. *Id.*, citing *Schmitt* at ¶ 17-19.

> In sum, our determination of whether the open-and-obvious nature of a hazard is a question of law for the court or question of fact for the jury will depend largely on the facts of each particular case. *See Boles v. Montgomery Ward & Co.* (1950), 153 Ohio St. 381, 384, 92 N.E.2d 9.

*Freiburger* at ¶ 11.  We have also held that, " '[a] person does not need to observe the dangerous condition for it to be an 'open-and-obvious' condition under the law; rather, the determinative issue is whether the condition is observable' or if 'plaintiff could have seen the condition if he or she had looked.' "  *Smith-Huff v. Wal-Mart Stores, Inc.*, 10th Dist. No. 15AP-454, 2015-Ohio-5238, ¶ 11, quoting *Thompson v. Ohio State Univ. Physicians, Inc.*, 10th Dist. No. 10AP-612, 2011-Ohio-2270, ¶ 12.

{¶ 17} With this understanding, we review the evidence in the record to determine whether genuine issues of any material facts exist that relate to whether, as a matter of law, the alleged hazard was open and obvious.  Construing the evidence in a light most favorable to the Johnsons, the nonmoving parties (*see Wilkins v. Harrisburg*, 10th Dist. No. 14AP-1028, 2015-Ohio-5472, ¶ 7), we find that there exist three matters of evidence creating genuine issues of material fact about whether the alleged hazard was open and obvious.

{¶ 18} First, from the photographs in the record, there is a question as to whether the curb appears to be "so obvious and apparent to the invitee that he or she may reasonably be expected to discover [it] and protect [oneself] against [it]."  *Ratcliff v. Wyandotte Athletic Club, LLC,* 10th Dist. No. 11AP-692, 2012-Ohio-1813, ¶ 16, citing *Simmons v. Am. Pacific Ent., L.L.C.*, 164 Ohio App.3d 763, 2005-Ohio-6957 (10th Dist.), citing *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968).  From its decision, it appears the trial court selected the photo it wanted to use to make its decision from among competing photos of the parties.  This is evident from the record when the trial court stated that the curb is plainly visible, even though there exists in the record photographic evidence provided by the Johnsons that depicts an obscured curb.

{¶ 19} Second, Georgia's undisputed testimony indicated that this configuration involving the curb was an unusual type of hazard and that it was situated at an unusual location, leaving open the question of whether or not the curb was so obvious that a

reasonable patron would be reasonably expected to discover it and protect against it. The trial court appears to have ignored or discounted this testimony from Georgia in reaching summary judgment for the association.

{¶ 20} Third, construing the location of the hazard in a light most favorable to the nonmoving party, the question of whether the attendant circumstances (golfers warming up) could have reduced an ordinary person's expectation of discovering and protecting oneself against it remains reasonably open to question. This is important because attendant circumstances can create an exception to the open-and-obvious doctrine. *Mayle v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-451, 2010-Ohio-2774, ¶ 20. The attendant circumstances must be so abnormal as to unreasonably increase the normal risk of an ordinary person, or so as to reduce the ordinary person's degree of care. *Id.* The circumstances must divert the invitee's attention, thus enhancing the danger and contributing to the injury. *Id.* Potential attendant circumstances include "poor lighting, a large volume of pedestrian traffic, the visibility of the defect, the overall condition of the walkway, and whether the nature of the site is such that one's attention would be easily distracted." *Id.* at ¶ 22, citing *Humphries v. C.B. Richard Ellis, Inc.*, 10th Dist. No. 05AP-483, 2005-Ohio-6105, ¶ 20. The trial court did not, in its determination of summary judgment, make mention of the attendant circumstances alleged by Georgia to have diverted her attention.

{¶ 21} Our de novo review of the record and the arguments of the parties show that the evidence provided for determining summary judgment to avoid a trial was in the form of undisputed testimony and photographs, which in and of themselves we find elicited material questions of fact. The photographic evidence, even only that provided by the association, is subject to differing interpretations as to whether it constituted an observable danger. Taking into consideration all the testimony and documentary evidence and drawing all reasonable inferences in favor of the Johnsons, we cannot say that no genuine issue of material fact remains. Thus, we cannot find as a matter of law that the placement and condition of the curb that Georgia said she fell on was an open and obvious danger. Nor can we say, when construing the evidence most strongly in favor of the Johnsons, that the association was entitled to summary judgment as a matter of law.

{¶ 22}  Having independently reviewed the record, we find there was ample evidence from which the trial court, drawing all reasonable inferences in favor of the Johnsons, should have found a genuine issue of material fact about whether the curb was open and obvious.  By simply looking at the photograph and drawing a conclusion, the trial court engaged in weighing the evidence; that is, determining its quality, all of which is impermissible on summary judgment.  It is a standard jury instruction for determining proof by a preponderance of the evidence, that, "[i]t is the quality of the evidence that must be weighed, and quality may or may not be identical with the quantity or the greater number of witnesses."  *State v. Levonyak*, 7th Dist. No. 05 MA 227, 2007-Ohio-5044, ¶ 58.  Thus, when a court on summary judgment draws inferences from photographs deeming them to be of such quality that the court can make the factual call, it impermissibly weighs the evidence.  More simply put: "Where the evidence presented allows conflicting inferences, a court considering a summary judgment motion may not weigh the evidence."  *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. No. 09AP-788, 2010-Ohio-1649, ¶ 20.

{¶ 23}  Upon this record's evidence, the trial court committed an error of law when it proceeded to determine whether the alleged hazard was observable and one that should have been observed by a reasonable person.  The trial court could not, under this set of facts, negate a duty to warn of an open and obvious danger and award judgment to the association. It should have denied the association's motion for summary judgment. Instead, it weighed the evidence and impermissibly reached factual conclusions that supplied the basis to render judgment for the association using the open-and-obvious doctrine and thereby barred recovery by the Johnsons.

{¶ 24}  The Johnsons' first assignment of error is sustained.

### C.  Second Assignment of Error

{¶ 25}  The Johnsons argue that the trial court, in basing its analysis on photographs provided by the association, while ignoring the photographs and testimonial evidence provided by the Johnsons, improperly weighed the evidence in considering the motion for summary judgment.  This is really a sub-argument of the first assignment of error relating to the more general assignment the trial court erred in granting summary judgment as there were genuine issues of material fact as to whether the hazard was open and obvious. Because we have already determined that the trial court impermissibly weighed the

evidence to reach the legal conclusion that no duty to warn was owed to the Johnsons under the open-and-obvious doctrine, the Johnsons' second assignment of error is already addressed by our finding as to the first assignment of error and we consider the second assignment no further.

## IV.  CONCLUSION

{¶ 26} In our de novo review of the record, we hold the trial court's summary judgment in favor of the association was granted in error.  Having reviewed the evidence and drawn all reasonable inferences therefrom in favor of the Johnsons as we are required to do by Civ.R. 56, we do find that the association was not legally entitled to summary judgment.  We sustain the Johnsons' first assignment of error and decline to address the Johnsons' second assignment of error because we have already addressed the issues relevant to that assignment in our first assignment of error.  We thus reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to the trial court for further proceedings consistent with this decision.

*Judgment reversed; cause remanded.*

TYACK and HORTON, JJ., concur.

_____