SADLER, J.
{¶ 1} Plaintiff-appellant, Lisa Rawlings, appeals from the judgment entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Springwood Apartments Columbus, Ltd. and Elon Property Management Company LLC ("Elon"), on appellant's statutory and common-law negligence claims. For the following reasons, we affirm in part, reverse in part, and *316 remand the matter for further proceedings related to the statutory negligence claim.
I. FACTS AND PROCEDURAL HISTORY
{¶ 2} In October 2015, appellant moved into an apartment in a 64-unit complex owned and managed by appellees. Appellant's daughter also lived in the apartment and both women are on the lease. The apartment complex includes an uncovered, surface parking lot. Residents of the apartment complex are not assigned a parking spot; tenants and their guests are allowed to park in any open spot. A grassy area lies between appellant's apartment and the parking lot, and a walkway provides access from the apartment to the lot. "[Ninety] percent of the time," appellant would park her car in the first parking spot next to the walkway, which was the closest spot to her apartment. (Rawlings Dep. at 8, 9.) That parking spot was fronted by a concrete block parking barrier, also called a "wheel stop," centered and wholly contained within the lateral confines of that one parking space. (Rawlings Aff. at 1.) The other ten percent of the time appellant would park in "whichever space was available" in the lot. (Rawlings Dep. at 9.) According to appellant, some of those other spaces had a wheel stop and some did not, but she knew there were wheel stops at the parking lot of her apartment complex spaces generally and believed "[t]here are parking blocks in every parking lot." (Rawlings Dep. at 12.)
{¶ 3} On March 1, 2016, appellant's car was parked not in her usual first spot next to the walkway but in the second spot over from the walkway. The second spot from the walkway was also fronted by a wheel stop, but, unlike the first spot, it sat halfway in the second spot and halfway in the third spot, essentially forming a "T" with the white painted line that divided spot two from spot three. Another person's car was parked next to her in spot three.
{¶ 4} Appellant had parked her car in the second spot. In doing so, appellant had not noticed there was a wheel stop in front of the second spot at all and explained that in getting out of her car from the driver's side, she would not have noticed it because of where the wheel stop was situated. Appellant agreed that had she been looking straight ahead when she was pulling her car into the second spot, she would have been able to see the wheel stop; in other words, nothing prevented her from seeing the wheel stop while pulling in.
{¶ 5} At approximately 6:00 p.m. that evening, appellant and her daughter left their apartment to go to dinner. Because her daughter was going to drive appellant's car, appellant headed to the passenger side of the vehicle. Due to flooding in the parking lot behind her car, appellant cut through the grassy area to get to her car instead of taking the walkway and going around the back of her car. It was dark outside. According to appellant, while the grassy area on the other side of the walkway had lighting, the parking lot did not. Before she got to the passenger side door, appellant's right leg caught the wheel stop and she fell to the ground, sustaining numerous physical injuries including a broken arm, a lacerated knee, and injuries to her nose and teeth.
{¶ 6} According to appellant, she was looking "towards the white line," which she could see, and "towards the passenger side" of her car at the time of the fall. (Rawlings Dep. at 14.) At one point in her deposition, appellant stated "[i]f you walked with your head straight down * * *, I probably would've noticed [the wheel stop]" but then separately stated either she "[didn't] know" or was "not really sure" if she would have been able to see the wheel stop had she been looking in *317 front of her while walking or that "shadows from the car" would have prevented her from seeing the wheel stop. (Rawlings Dep. at 14-15.) Appellant added she "would imagine * * * I would've noticed it probably about the time I hit it." (Rawlings Dep. at 15.) Appellant said she still lives at the apartment and is able to see the wheel stop she tripped over.
{¶ 7} The day following the accident, appellant's daughter informed Latearia Drumgo ("Drumgo"), the property manager for Elon, of the fall, and Drumgo viewed the area where the fall occurred, completed an incident report, and sent the report to her district manager. According to Drumgo and the service manager for Elon at the time, Alfred Riley ("Riley"), they make rounds of the property daily; Drumgo did not think the parking lot was flooded on the day of the accident. Both Drumgo and Riley believed there is lighting in the parking lot.
{¶ 8} According to Elon's District Manager Michael Bagby ("Bagby"), appellees were not the original owners and managers of the complex, but, rather, the property had been bought and sold multiple times since its initial construction in 1984. Riley and Drumgo were not sure about the exact history of the wheel stops, but both stated the wheel stops were in place since they began working at the property (which preceded appellant's arrival as a tenant), and at no point had wheel stops been removed or added during their tenures. Both Riley and Drumgo also believed the position of the wheel stops-half in one space and half in another space-is consistent throughout the property. Drumgo, Riley, and Bagby stated the purpose of a wheel stop is to prevent cars from rolling onto the grass or into buildings. Appellant had never complained or expressed concern about the positioning of the wheel stops previously, and appellees never received any complaint about the wheel stops and never had an instance where someone was injured because of one.
{¶ 9} On November 1, 2016, appellant filed a complaint alleging common law and Ohio landlord-tenant statutory negligence claims against appellees arising out of a "misplaced cement parking barrier" that caused her to fall and fracture her upper arm and have severe injuries to her teeth, knee, and head including a concussion, contusion of the voice box, and facial lacerations.[1] (Nov. 1, 2016 Compl. at 1.)
{¶ 10} After appellant was deposed, appellees filed a motion for summary judgment on January 24, 2018 arguing: (1) appellant's negligence claim fails because the wheel stop was open and obvious; (2) there were no attendant circumstances, such as a shadow from a car or the general darkness outside, to prevent the open and obvious nature of the wheel stop; and (3) Ohio's landlord-tenant law is inapplicable since "there are no sections in R.C. 5321.01(A) that can be applied to a 'misplaced' cement parking barrier." (Jan. 24, 2018 Mot. for Summ. Jgmt. at 8.) Appellees *318 pointed to appellant's deposition in support of summary judgment.
{¶ 11} On March 14, 2018, appellant filed a memorandum in opposition to appellees' motion for summary judgment arguing appellees were negligent by positioning a wheel stop, a known tripping hazard, in the aisle between adjacent parking spots where pedestrians are expected to walk. According to appellant, there is a genuine issue of material fact present as to whether there were attendant circumstances contributing to appellant's fall that would rebut an open and obvious defense, including:
(1) It was 6:00 p.m. and dark out.
(2) There was an absence of artificial light in the parking lot.
(3) There were shadows from the parked vehicle cast onto the ground.
(4) There was a vehicle parked next to [appellant's] vehicle which permitted only a small portion of the wheel stop to protrude out from under the parked cars.
(5) The wheel stop was not painted or marked in contrast with its surroundings.
(6) There was flooding in the parking lot behind [appellant's] vehicle which restricted her options as to where she could walk.
(7) [Appellant] had never parked her vehicle in a situation like this before where a wheel stop was half in her parking space and half in another parking space.
(8) [Appellant] was looking down at the painted white stall line in order to assure herself of a safe path of travel and did not see anything.
(9) The wheel stop was improperly placed in the natural aisle between adjacent vehicles, rather than fronting the parking space.
(Mar. 14, 2018 Memo. in Opp. at 10-11.)
{¶ 12} Appellant further argued the open-and-obvious doctrine does not preclude liability under Ohio landlord-tenant law, and there is a genuine issue of material fact as to whether appellees violated their duty to keep common areas in a safe condition pursuant to R.C. 5321.01(A)(3). Appellant pointed to her own deposition and affidavit, the depositions of Drumgo, Riley, and Bagby, photographs of the parking space and lot, and the affidavit of Catherine Peterman, a forensic architect for Robson Forensic, Inc.
{¶ 13} According to Peterman's affidavit, her education, training, and experience includes the design, construction, and maintenance of multi-family residential developments, including apartment housing, and she is often called on to evaluate the safety and compliance of multi-family residential development, including apartment housing, with respect to applicable building and property maintenance codes and relevant industry standards. Peterman described the applicable standard of care as follows:
18. It is well established for at least four decades that parking lot wheel stops are a pedestrian trip-and-fall hazard. The standard of care for parking lots at residential housing developments requires that wheel stops should not be used where pedestrians are expected to be walking.
* * *
27. * * * The standard of care for safe parking lots requires that low features such as wheel stops be painted to make them more conspicuous. Since pedestrians will assume that walkways do not have hazards, property owners must either eliminate hazards, or at least take *319 the less effective step of making sure they are conspicuous. * * *
28. This requires painting with appropriate warning colors. * * *
* * *
32. The standard of care for a property owner and property manager of a multi-family housing complex includes maintaining safe premises for residents and guests. It includes ensuring that reasonable periodic inspections are conducted to identify hazards, and correcting those hazards in a prompt manner.
33. It is the property owner's responsibility to maintain safe premises at all times. When dangerous conditions exist, such as the wheel stops, reasonable efforts should be made to remove them or prevent them from being encountered in a manner that could cause harm.
(Peterman Aff. at 3-5.) She then opined:
37. Within the bounds of reasonable architectural and technical certainty, and subject to change if additional information becomes available * * *:
a. The location of the wheel stop where [appellant] fell was a tripping hazard along a foreseeable pedestrian path that violated applicable code and standards for safe parking lots and was dangerous in a manner that caused her fall and injury.
b. The placement of wheel stops in a foreseeable pedestrian path, as existed at Springwood Apartments, created a dangerous tripping hazard in the means of egress that caused [appellant] to trip and fall.
c. Elan Property Management should have reasonably known that wheel stops installed on the painted lines in the natural aisle between parking spaces, where pedestrians walk between parked cars are hazardous.
d. The lack of conspicuous marking on the wheel stops impaired the ability of pedestrians like [appellant] to identify and avoid them.
e. Placing wheel stops in an area specifically designed and intended for pedestrians violated the standard of care and created the dangerous condition that caused [appellant's] fall and injury.
(Peterman Aff. at 6.) In support of her opinion, Peterman cited to an array of "nationally accepted" guides and standards, including: "ASTM Standard F 1637-10, 'Standard Practice for Safe Walking Surfaces ,' ASTM International, West Conshohocken, PA, 2010"; American National Standards Institute; International Property Maintenance Code, Section 301.3; Dov Zohar, Why Do We Bump Into Things While Walking (The Human Factors Society, 1978); Kevin Lynch, Site Planning (The M.I.T. Press, Cambridge, MA, 1962); Ramsey/Sleeper, Architectural Graphic Standards , 10th Ed. (John Wiley & Sons, New York, 2000); Parking Principles (National Academy of Engineering, Washington, D.C., 1971); The Dimensions of Parking (The Urban Land Institute and the National Parking Association, 1993); and Wesley E. Woodson, Human Factors Design Handbook , 2d Edition (McGraw-Hill, Inc., New York, 1992). (Peterman Aff. at 3.)
{¶ 14} In their reply in support of summary judgment, appellees contended that Peterman's affidavit should be stricken because appellant failed to timely identify her as an expert witness and because her opinions are immaterial to open-and-obvious hazards. Appellees additionally contended that the attendant circumstances identified by appellant are not adequate to create an issue of material fact as to the open-and-obvious doctrine and that the concrete parking barrier is not in violation of Ohio's landlord-tenant law under *320 R.C. 5321.04(A)(3) because no evidence shows appellees knew and or should have known of the factual circumstances that caused any alleged violation of the landlord-tenant act.
{¶ 15} On April 23, 2018, the trial court granted appellees' motion for summary judgment. Regarding the statutory negligence claim, the trial court found "[t]he fact that [appellees] knew parking barriers in the lot extended over two spaces in and of itself is insufficient to invoke liability under R.C. 5321.04(A)(3) [sic]," and the "relevant inquiry is whether [appellees] had actual or constructive notice of the dangerous nature of the condition or hazard." (Apr. 23, 2018 Trial Ct. Decision & Entry at 6.) The trial court noted that it "would have been inclined to strike Peterman's affidavit" had appellees submitted a "motion to strike or exclude Peterman on the basis of the improper disclosure" of an expert witness. (Trial Ct. Decision & Entry at 7.) Nevertheless, to the trial court, Peterman's affidavit was immaterial on the issues of whether the wheel stop barrier was open and obvious and whether appellees had "notice of the hazard." (Trial Ct. Decision & Entry at 7.) Rather:
The uncontroverted facts, even when construed in favor of [appellant], establish [appellees] had no actual or constructive notice that the position of its parking barrier posed a hazard to pedestrians at its premises. [Appellees] maintained the half and half parking barriers at its lot for several years prior [to appellant's] fall. Prior to the incident, neither [appellant], nor any other tenant, complained to [appellees] or its employees about the positioning of the barriers being unsafe. Nothing within Peterman's affidavit contradicts these facts, or provided a sufficient basis for the Court to impute knowledge upon [appellees].
(Trial Ct. Decision & Entry at 7.)
{¶ 16} Thus, the trial court found appellant failed to present evidence demonstrating the placement of the wheel stop was a hazardous condition appellees knew or should have known about, and appellant "cannot establish an essential element of the statutory claim (i.e. the landlord or premises owner's notice of the hazard)" to hold appellees liable under R.C. 5321.04(A)(3). (Trial Ct. Decision & Entry at 7.)
{¶ 17} Regarding the common-law negligence claim, the trial court found the hazard presented by the wheel stop to be open and obvious with none of the nine attendant circumstances presented by appellant "significant enough to obviate application of the open and obvious doctrine, or create an issue of fact about the obvious nature of the hazard created by a parking barrier." (Trial Ct. Decision & Entry at 12.) As a result, the trial court found appellees owed appellant no duty to warn or protect her from the open-and-obvious nature of the wheel stop.
{¶ 18} Appellant filed a timely appeal.
II. ASSIGNMENT OF ERROR
{¶ 19} Appellant assigns the following as trial court error:
The Trial Court Erred in Granting Defendant's Motion for Summary Judgment.
III. STANDARD OF REVIEW
{¶ 20} Pursuant to Civ.R. 56(C), summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in *321 favor of the nonmoving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. Harless v. Willis Day Warehousing Co. , 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). "When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims." Lundeen v. Graff , 2015-Ohio-4462, 46 N.E.3d 236, ¶ 11 (10th Dist.), citing Dresher v. Burt , 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the nonmovant must set forth specific facts demonstrating a genuine issue for trial. Dresher at 293, 662 N.E.2d 264.
{¶ 21} Appellate review of summary judgment is de novo. Gabriel v. Ohio State Univ. Med. Ctr. , 10th Dist. No. 14AP-870, 2015-Ohio-2661, 2015 WL 3963953, ¶ 12, citing Byrd v. Arbors E. Subacute & Rehab. Ctr. , 10th Dist. No. 14AP-232, 2014-Ohio-3935, 2014 WL 4459120, ¶ 5. "When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination." Gabriel at ¶ 12, citing Byrd at ¶ 5, citing Maust v. Bank One Columbus, N.A. , 83 Ohio App.3d 103, 107, 614 N.E.2d 765 (10th Dist.1992).
IV. LEGAL ANALYSIS
A. Appellant's Assignment of Error
{¶ 22} Appellant argues that the trial court erred in granting summary judgment in favor of appellees because a genuine dispute of material fact remains as to whether (1) under common law, the wheel stop was open and obvious and whether attendant circumstances existed that contributed to appellant's fall, and (2) under statutory law, a genuine dispute of material fact remains as to whether appellees violated R.C. 5321.04(A)(3) in the placement of the wheel stop.
1. Common-Law Negligence
{¶ 23} "It is fundamental that in order to establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom." Armstrong v. Best Buy Co. , 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 8, citing Menifee v. Ohio Welding Prods., Inc. , 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).
{¶ 24} "The open-and-obvious doctrine remains viable in Ohio." Armstrong at syllabus (analyzing open-and-obvious doctrine under the common-law duty to warn invitees of latent or hidden dangers), approving and following Sidle v. Humphrey , 13 Ohio St.2d 45, 233 N.E.2d 589 (1968). The open-and-obvious doctrine states that "a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious." Armstrong at ¶ 5 (rejecting proposition that open-and-obvious doctrine should be analyzed under the causation element of negligence). "The rationale underlying this doctrine is 'that the open and obvious nature of the hazard itself serves as a warning.' " Id. , citing Simmers v. Bentley Constr. Co. , 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992). Thus, "the rule properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." Armstrong at ¶ 13.
*322 {¶ 25} As this court stated in Sherlock v. Shelly Co. , 10th Dist. No. 06AP-1303, 2007-Ohio-4522, 2007 WL 2473235, ¶ 11 :
Open and obvious dangers are those not hidden, concealed from view, or undiscoverable upon ordinary inspection. Lydic v. Lowe's Cos., Inc. , Franklin App. No. 01AP-1432, 2002-Ohio-5001 [2002 WL 31111820], ¶ 10. A person does not need to observe the dangerous condition for it to be an "open and obvious" condition under the law; rather, the determinative issue is whether the condition is observable. Id. Even in cases where the plaintiff did not actually notice the condition until after he or she fell, this court has found no duty where the plaintiff could have seen the condition if he or she had looked. Id.
{¶ 26} "[A]ttendant circumstances can create an exception to the open-and-obvious doctrine." Johnson v. Am. Italian Golf Assn. of Columbus , 2018-Ohio-2100, 113 N.E.3d 1144, ¶ 20 (10th Dist.). Cooper v. Meijer Stores Ltd. Partnership , 10th Dist. No. 07AP-201, 2007-Ohio-6086, 2007 WL 3380468, ¶ 14 ("Even when a plaintiff admits not seeing an obstacle because he or she never looked down, a jury question may arise if attendant circumstances distracted him or her."). "An attendant circumstance is a factor that contributes to the fall and is beyond the control of the injured party." Id. at ¶ 15, citing Backus v. Giant Eagle, Inc. , 115 Ohio App.3d 155, 158, 684 N.E.2d 1273 (7th Dist.1996). An attendant circumstance must be a "significant distraction" that diverts the invitee's attention and cannot include " 'regularly encountered, ordinary, or common circumstances.' " Haller v. Meijer, Inc. , 10th Dist. No. 11AP-290, 2012-Ohio-670, 2012 WL 566655, ¶ 10 ; Esterman v. Speedway LLC , 1st Dist. No. C-140287, 2015-Ohio-659, 2015 WL 929413, ¶ 11, quoting Colville v. Meijer Stores, Ltd. , 2d Dist. No. 2011-CA-011, 2012-Ohio-2413, 2012 WL 1964959, ¶ 30. Johnson at ¶ 20 ("The attendant circumstances must be so abnormal as to unreasonably increase the normal risk of an ordinary person, or so as to reduce the ordinary person's degree of care.").
{¶ 27} "It is well-settled that '[c]ertain clearly ascertainable hazards or defects may be deemed open and obvious as a matter of law for purposes of granting summary judgment.' " Ratcliff v. Wyandotte Athletic Club , 10th Dist. No. 11AP-692, 2012-Ohio-1813, 2012 WL 1419037, ¶ 18, quoting McConnell v. Margello , 10th Dist. No. 06AP-1235, 2007-Ohio-4860, 2007 WL 2729429, ¶ 11. Whether the open-and-obvious nature of a hazard presents a question of law for the court or a question of fact for the jury will depend largely on the facts of each particular case. Cooper .
{¶ 28} In this case, appellant first argues that the wheel stop at issue was not open and obvious because, similar to the Johnson case, the wheel stop was placed in an unusual position, and the position was not customary with her experience of parking in the lot. We disagree with appellant's argument.
{¶ 29} In Johnson , while attending a golf event at a country club she had never been to before, the plaintiff tripped and fell over a concrete curb located between a grass surface and an artificial turf surface. The plaintiff argued the curb was obscured by overgrown grass and, as an experienced golfer, she would not anticipate a concrete curb in that location. This court found a genuine issue of material fact existed as to whether the curb was open and obvious. In doing so, we noted competing photographs in the record-some with a visible curb and some with an obscured curb-and the plaintiff's testimony about the unusual location of the curb raised a question of *323 whether the curb was so obvious and apparent the plaintiff may reasonably be expected to discover and protect herself from it. We likewise found a question remained as to whether an attendant circumstance (golfers warming up) created an exception to the open-and-obvious doctrine. We found, for purposes of summary judgment, the trial court impermissibly weighed the evidence and drew its own conclusion amid the competing evidence, thereby committing an error of law. Therefore, we found summary judgment granted in favor of the defendant to be in error and reversed the decision.
{¶ 30} The Johnson decision does not demand reversal here. First, generally, appellate courts consider wheel stops an open-and-obvious tripping hazard. Furano v. Sunrise Inn of Warren, Inc. , 11th Dist. No. 2008-T-0132, 2009-Ohio-3150, 2009 WL 1845228, ¶ 18 ("The hazard presented by a tire stop * * * is so open and obvious that anyone exiting a vehicle which has just pulled into a parking spot fronted by a tire stop is reasonably expected to take precautions and negotiate his or her steps around the elevation."); Cash v. Thomas & King Ltd. Liab. Co. , 11th Dist. No. 2015-T-0030, 2016-Ohio-175, 2016 WL 233708, ¶ 21. Second, in regard to the open-and-obvious doctrine, the Johnson opinion rested on more than the location of the curb and particularly focused on competing evidence regarding whether the curb was covered by overgrown grass. Unlike in Johnson , uncontroverted photographic evidence in the instant case shows the wheel stop is observable and not hidden or concealed from view. In fact, appellant testified that had she been looking straight ahead when she was pulling her car into the second spot, she would have been able to see the wheel stop and nothing prevented her from seeing the wheel stop while pulling in. Appellant also testified that since the accident she was able to observe the wheel stop. Third, we note the allegedly "unusual" location of the wheel stop in this case (spanning two parking spots) makes the curb more, rather than less, visible within a pedestrian's path. (Appellant's Brief at 25.) Therefore, barring attendant circumstances, we find the wheel stop in this case to be open and obvious as a matter of law.
{¶ 31} Appellant argues the exception for attendant circumstances should nonetheless apply in this case because it was dark out, the absence of lighting in the parking lot created shadows from the vehicles, the wheel stop was a "dark cement color" that was difficult to distinguish from the black pavement, appellant was forced to approach the car by way of the grassy area instead of through the parking lot due to flooding, and appellant was unfamiliar with the wheel stop in the second parking space from the walkway and the usual spot she parked had a centered wheel stop. (Appellant's Brief at 28.) Citing Furano and Cash , both of which found no attendant circumstances to overcome the open-and-obvious doctrine, appellant acknowledges that "Ohio courts have repeatedly held that the previously mentioned circumstances are ordinarily not enough to be considered adequate attendant circumstances." (Appellant's Brief at 28.) However, appellant believes the additional circumstance present here-the "unexpected and improper" location of the wheel stop across the foreseeable pedestrian pathway-distinguishes this case from the likes of Furano and Cash and creates an issue of material fact based on the attendant circumstances doctrine. (Appellant's Brief at 30.)
{¶ 32} Appellate courts typically view darkness as a circumstance that increases, rather than decreases, the degree of care an ordinary person would exercise.
*324 Jeswald v. Hutt , 15 Ohio St.2d 224, 227, 239 N.E.2d 37 (1968) (" 'Darkness' is always a warning of danger, and for one's own protection it may not be disregarded."); Mayle v. Ohio Dept. of Rehab. & Corr. , 10th Dist. No. 09AP-541, 2010-Ohio-2774, 2010 WL 2433119, ¶ 22, 26 (finding darkness to not be an attendant circumstance where the plaintiff admitted that he was not looking down at the ground at the time of the accident despite his belief that the area was poorly lit); McCoy v. Kroger Co. , 10th Dist. No. 05AP-7, 2005-Ohio-6965, 2005 WL 3547964, ¶ 14-16 (finding darkness was not an attendant circumstance sufficient to avoid the application of the open-and-obvious doctrine where the plaintiff testified that nothing distracted him and he was looking straight ahead instead of at the ground while he exited his truck); Jenkins v. Ohio Dept. of Rehab. & Corr. , 10th Dist. No. 12AP-787, 2013-Ohio-5106, 2013 WL 6095878, ¶ 17 (noting "inadequate lighting acts as a warning itself to proceed with caution"); Jackson v. Pike Cty. Bd. of Commrs. , 4th Dist. No. 10CA805, 2010-Ohio-4875, 2010 WL 3902618, ¶ 24 (finding if the area was dark and shadowed, then such condition itself should have served as a warning to appellant to exercise caution, and it cannot serve as an attendant circumstance).
{¶ 33} Here, the evidence, viewed in appellant's favor for purposes of summary judgment, shows the appellant exited her apartment while it was dark, the parking lot did not have lighting, and shadows fell from the cars flanking the wheel stop. Consistent with case law cited above, these conditions increased rather than reduced the degree of care a person would exercise, which is inconsistent with the attendant circumstances doctrine. Price v. Dept. of Rehab. & Corr. , 10th Dist. No. 14AP-11, 2014-Ohio-3522, 2014 WL 4049893, ¶ 16, citing Bonner v. Glassman , 8th Dist. No. 96924, 2012-Ohio-86, 2012 WL 112664, ¶ 31 (attendant circumstances exception does not apply where "circumstances should have led the plaintiff to exercise heightened care for his personal safety"). (Emphasis sic.) Similar to Mayle and McCoy , the evidence also shows at the time of her fall appellant was not looking down but, rather, was looking at the white line dividing the parking spaces. Considering all the above, we find the issues raised by appellant related to darkness and poor lighting insufficient to constitute an attendant circumstance in this case.
{¶ 34} Appellant next references the color of the wheel stop but does not provide authority in support of this specific argument. As such, appellant has not met her burden in demonstrating error on appeal in this regard. App.R. 16(A)(7) ; State v. Sims , 10th Dist. No. 14AP-1025, 2016-Ohio-4763, 2016 WL 3574550, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal); State v. Smith , 2017-Ohio-359, 83 N.E.3d 302, ¶ 22 (9th Dist.) (noting that it is not the duty of an appellate court to create an argument on an appellant's behalf).
{¶ 35} Regardless, the Cash court considered a similar argument and found an unpainted wheel stop that nonetheless contrasts with the parking lot is not an attendant circumstance. Id. at ¶ 30-31. The photographic evidence here shows the wheel stop, although unpainted, contrasted with the black pavement of the parking lot. Appellant admitted she was not looking down at the wheel stop when she fell (in other words, her attention was not diverted or distracted by the wheel stop). Thus, in this case, appellant has not demonstrated the unpainted wheel stop fits within the definition of an attendant circumstance. Haller at ¶ 10 ; Esterman at ¶ 11 ; Johnson at ¶ 20.
*325 {¶ 36} Appellant's next arguments likewise do not fit within the parameters of the attendant circumstances doctrine. Regarding the position of the wheel stop, generally speaking, a wheel stop that protrudes beyond a vehicle's tire does "not reflect any distraction or diversion that would warrant an application of the doctrine of attendant circumstances." (Emphasis omitted.) Furano at ¶ 25. See also Cash at ¶ 32 (protrusion of parking bumper six to nine inches beyond the passenger side of the vehicle is not an attendant circumstance and has no bearing on the open-and-obvious nature of the hazard); Zambo v. Tom-Car Foods , 9th Dist. No. 09CA009619, 2010-Ohio-474, 2010 WL 520804, ¶ 12 (noting that "unusual" location of a parking bumper is not the dispositive question but rather "[t]he question is whether a reasonable person would have discovered it under the circumstances"). While appellant argues the distinction from Furano here is that the wheel stop spanned the entire pedestrian path, appellant did not testify (and does not argue) the position of the wheel stop distracted her or diverted her attention; she essentially testified in the opposite.[2] Thus, despite the distinction between the location of the wheel stop here and Furano , we are not persuaded the trial court erred in declining to deem the location of the wheel stop an attendant circumstance in this case.
{¶ 37} Appellant's flooding argument similarly fails. This court has determined a plaintiff's belief that only one walking route is available is immaterial to whether the hazard itself was open and obvious. Jenkins at ¶ 15 ("even if the inmate believed he had only one route available, his inability to select his route of travel does not mean the hazard was not an open and obvious condition"). Moreover, appellant discussed flooding as the reason she chose a particular pathway but did not testify (and does not argue) that flooding distracted her and was the reason she did not look down so as to fit within the attendant circumstances doctrine.
{¶ 38} Considering all the above, we find the wheel stop in this case to be an open-and-obvious hazard, and appellant has not demonstrated attendant circumstances, viewed individually and collectively, warrant an exception to the open-and-obvious doctrine. On reviewing the evidence, we believe the trial court correctly concluded that appellees have shown there to be no genuine issue of material fact for trial in this regard. Therefore, we overrule appellant's assignment of error as it relates to common-law negligence.
2. Statutory Negligence Under R.C. 5321.04(A)(3)
{¶ 39} Appellant argues a genuine dispute of material fact remains as to whether appellees violated R.C. 5321.04(A)(3) in regard to the placement of the wheel stop.
{¶ 40} Generally, in addition to a common-law duty of care, "a landlord owes his or her tenants and other persons who are lawfully on the premises" the statutory duties listed in R.C. 5321.04(A).[3]
*326 Tatiana Walker v. Hartford on the Lake, L.L.C. , 2016-Ohio-7792, 73 N.E.3d 1131, ¶ 31 (10th Dist.). Among these duties, a landlord must "[k]eep all common areas of the premises in a safe and sanitary condition." R.C. 5321.04(A)(3). A parking lot on a landlord's property and under the landlord's control generally fits the definition of a "common area" under R.C. 5321.04(A)(3). Lilly v. Bradford Invest. Co. , 10th Dist. No. 06AP-1227, 2007-Ohio-2791, 2007 WL 1640850, ¶ 24.
{¶ 41} "A violation of the duty imposed by R.C. 5321.04(A)(3) constitutes negligence per se and obviates the open-and-obvious-danger doctrine." Mann v. Northgate Investors, L.L.C. , 138 Ohio St.3d 175, 2014-Ohio-455, 5 N.E.3d 594, ¶ 33. "The concept of negligence per se allows the plaintiff to prove the first two prongs of the negligence test, duty and breach of duty, by merely showing that the defendant committed or omitted a specific act prohibited or required by statute; no other facts are relevant." Lang v. Holly Hill Motel, Inc. , 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 15. Thus, "a finding of negligence per se does not necessarily result in liability." Mann at ¶ 12 (distinguishing "per se" liability from "strict" liability). Rather, the plaintiff must still establish proximate cause for the injuries sustained and damages. Id. ; Robinson v. Bates , 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, ¶ 23. In the context of a statutory negligence claim under R.C. 5321.04(A), the plaintiff must also still establish the landlord had "actual or constructive notice of the defective condition."
*327 Sikora v. Wenzel , 88 Ohio St.3d 493, 495, 727 N.E.2d 1277 (2000) ; Wochele v. Veard Willoughby Ltd. Partnership , 11th Dist. No. 2017-L-062, 2017-Ohio-8807, 2017 WL 5998230, ¶ 34. See Mann at ¶ 26-27, 32.
{¶ 42} As a preliminary issue, appellant contends whether appellees violated Ohio landlord-tenant law is a question for the jury pursuant to Robinson at ¶ 26. We note the trial court did not actually determine whether a statutory violation occurred since it determined appellant could not prove appellants had notice of a hazard. Regardless, in Lilly , this court addressed a similar argument. There, we stated:
[C]ontrary to appellants' suggestion, the Ohio Supreme Court did not hold in Robinson that all claims against a landlord for breach of a landlord's statutory duty must be submitted to a jury. Rather, the Ohio Supreme Court examined the record before it and concluded that, "[f]rom the testimony, it is clear that a jury should have been allowed to consider whether [the landlord] exercised reasonable diligence and care in [a repair] * * * or instead breached her statutory duty to repair." Id. at ¶ 24.
Id. at ¶ 23. Thus, appellant's argument, which suggests the question of whether a landlord violated Ohio landlord-tenant law is always a question for the jury, is unsupported under this court's precedent.
{¶ 43} The remainder of appellant's argument centers on whether the trial court misinterpreted the notice requirement and erred in finding the expert affidavit immaterial. The trial court granted summary judgment in favor of appellees on the statutory negligence claim solely because appellant failed to present evidence that appellees had "actual or constructive notice of the dangerous nature of the condition or hazard "; in other words, "that the positioning of its parking barriers posed a hazard to pedestrians at its premises." (Emphasis added.) (Trial Ct. Decision & Entry at 6, 7.) The trial court found the fact appellees knew parking barriers in the lot extended over two spaces in and of itself is insufficient to invoke liability under R.C. 5321.04(A)(3).
{¶ 44} Citing primarily to Sikora and Wochele , appellant contends the notice requirement simply "requires landlords have notice of the condition " causing the statutory violation and "does not require landlords have notice of the dangerous nature of the condition." (Emphasis added.) (Appellant's Brief at 18.) Appellant contends Wochele is consistent with Sikora in looking for evidence the landlord knew about a fallen cinderblock rather than whether the landlord knew the cinderblock was dangerous. To appellant, in light of the expert affidavit, "common sense" that the wheel stop position across the pedestrian pathway is a tripping hazard and appellees' knowledge of the position of the wheel stops, a reasonable juror could find appellees had notice of the condition causing a violation of R.C. 5321.04(A)(3). (Appellant's Brief at 19.) Appellant notes the Landlord Tenant Act should be read liberally in favor of tenants' rights pursuant to LaCourse v. Fleitz , 28 Ohio St.3d 209, 503 N.E.2d 159 (1986).
{¶ 45} In referencing the notice language of Sikora and Shroades v. Rental Homes, Inc. , 68 Ohio St.2d 20, 427 N.E.2d 774 (1981), this court has stated "a landlord's notice of the condition causing a statutory violation is a prerequisite to liability" and evaluated the notice requirement as whether the record established a genuine issue of material fact that the landlord "knew or should have known about a defect " in the premises. (Emphasis added.) Thatcher v. Lauffer Ravines, LLC , 10th Dist. No. 11AP-851, 2012-Ohio-6193, 2012 WL 6738492, ¶ 48 ;
*328 Wiles v. Miller , 2013-Ohio-3625, 3 N.E.3d 226, ¶ 8 (10th Dist.) ; Lilly at ¶ 31. See also Sikora (a plaintiff must show a landlord either "knew [or] should have known of the factual circumstances that caused the violation").
{¶ 46} In this case, it is undisputed that appellees were aware of the presence and positioning of the wheel stops. Appellant had never complained or expressed concern about the positioning of the wheel stops previously, and appellees never received any complaint about the wheel stops and never had an instance where someone was injured because of one. However, in opposing summary judgment, appellant presented the affidavit of an expert witness, Peterman,[4] that specifically stated the location of the wheel stop in this case was "a tripping hazard along a foreseeable pedestrian path that violated applicable code and standards for safe parking lots" and appellees "should have reasonably known that wheel stops installed on the painted lines in the natural aisle between parking spaces, where pedestrians walk between parked cars are hazardous." (Peterman Aff. at 6.)
{¶ 47} Having independently reviewed the sole issue raised in appellees' motion for summary judgment in regard to statutory negligence, and viewing the evidence most strongly in favor of appellant, we find a genuine issue of material fact remains as to whether appellees had constructive notice of a defective condition or, in other words, should have known of factual circumstances that caused a violation of the landlord's duty under R.C. 5321.04(A)(3) to keep common areas in a safe condition. Sikora. As a result, pursuant to Civ.R. 56(C), we hold summary judgment on appellant's statutory negligence claim based on lack of notice was granted in error. Dresher at 293, 662 N.E.2d 264.
{¶ 48} Accordingly, appellant's assignment of error is sustained as it relates to the issue of notice as an element of appellant's statutory negligence claim.
V. CONCLUSION
{¶ 49} Having overruled in part and sustained in part appellant's sole assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to the trial court for further proceedings consistent with this decision.
Judgment affirmed in part, reversed in part; cause remanded.
TYACK and KLATT, JJ., concur.

Appellant specifically alleged that appellees "negligently, intentionally, willfully, wantonly, recklessly, unlawfully, and in violation of Ohio Landlord Tenant Law * * * failed to exercise reasonable care to protect [appellant] from injury on the premises on which [appellant] fell, which included the duty to make reasonable inspections to discover hazardous conditions on the premises, to take reasonable steps to protect [appellant] from such conditions, and a duty to warn [appellant] and others of hazardous conditions; * * * caused or permitted to cause the hazardous condition to exist; * * * failed to exercise reasonable care by the failure to implement preventative measures designed to eliminate or reduce the danger posed by the condition; * * * caused or permitted to cause the [appellant] to trip and fall on the parking barrier." (Nov. 1, 2016 Compl. at 2.)

When she tripped, appellant's attention was on the white line. She does not argue the white line was an attendant circumstance that altered the open-and-obvious nature of the wheel stop.

R.C. 5321.04(A) reads in its entirety:
(A) A landlord who is a party to a rental agreement shall do all of the following:
(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;
(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
(3) Keep all common areas of the premises in a safe and sanitary condition;
(4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by the landlord;
(5) When the landlord is a party to any rental agreements that cover four or more dwelling units in the same structure, provide and maintain appropriate receptacles for the removal of ashes, garbage, rubbish, and other waste incidental to the occupancy of a dwelling unit, and arrange for their removal;
(6) Supply running water, reasonable amounts of hot water, and reasonable heat at all times, except where the building that includes the dwelling unit is not required by law to be equipped for that purpose, or the dwelling unit is so constructed that heat or hot water is generated by an installation within the exclusive control of the tenant and supplied by a direct public utility connection;
(7) Not abuse the right of access conferred by division (B) of section 5321.05 of the Revised Code ;
(8) Except in the case of emergency or if it is impracticable to do so, give the tenant reasonable notice of the landlord's intent to enter and enter only at reasonable times. Twenty-four hours is presumed to be a reasonable notice in the absence of evidence to the contrary.
(9) Promptly commence an action under Chapter 1923. of the Revised Code, after complying with division (C) of section 5321.17 of the Revised Code, to remove a tenant from particular residential premises, if the tenant fails to vacate the premises within three days after the giving of the notice required by that division and if the landlord has actual knowledge of or has reasonable cause to believe that the tenant, any person in the tenant's household, or any person on the premises with the consent of the tenant previously has or presently is engaged in a violation as described in division (A)(6)(a)(i) of section 1923.02 of the Revised Code, whether or not the tenant or other person has been charged with, has pleaded guilty to or been convicted of, or has been determined to be a delinquent child for an act that, if committed by an adult, would be a violation as described in that division. Such actual knowledge or reasonable cause to believe shall be determined in accordance with that division.
(10) Comply with the rights of tenants under the Servicemembers Civil Relief Act, 117 Stat. 2835, 50 U.S.C. App. 501.

While appellees requested the trial court strike Peterman's affidavit in their motion for summary judgment, appellees do not argue on appeal that Peterman's affidavit should have been stricken or present legal authority for why it was an abuse of discretion for the trial court to not do so. Rather, appellees assert the trial court correctly found her affidavit immaterial to the issues of whether the barrier was open and obvious and/or whether appellees had actual or constructive notice of the hazard for purpose of imposing statutory liability.