[Cite as *St. Germain v. Newell*, 2015-Ohio-3713.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY


THOMAS ST. GERMAIN,

      PLAINTIFF-APPELLANT,                CASE NO.  9-15-14

      v.

GLEN NEWELL,                             **O P I N I O N**

      DEFENDANT-APPELLEE.


Appeal from Marion County Common Pleas Court
Trial Court No. 2013 CV 0679

**Judgment Affirmed**

Date of Decision:   September 14, 2015


APPEARANCES:

    *Jeff Ratliff* **for Appellant**

    *Bruce A. Curry* **for Appellee**

**SHAW, J.**

{¶1} Plaintiff-appellant, Thomas St. Germain ("St. Germain") appeals the February 24, 2015, judgment of the Marion County Common Pleas Court granting summary judgment to defendant-appellee, Glen Newell ("Newell") on the issues of whether Newell, as landlord, was negligent or negligent per se in failing to repair a loose handrail in St. Germain's stairway.

{¶2} The facts relevant to this appeal are as follows. On January 29, 2013, St. Germain allegedly was walking down a stairway at the apartment he was staying in when the handrail he was using broke causing him to fall down the stairway and sustain injuries. (Doc. No. 1).

{¶3} On November 15, 2013, St. Germain filed a complaint against Glen Newell, the landlord who owned the residence where the alleged incident occurred, 843 ½ Uncapher in Marion, Ohio. (Doc. No. 1). St. Germain alleged that Newell had been previously made aware that the handrail was in an "unsafe condition" numerous times, and that Newell was negligent for failing to fix the railing. (*Id.*)

{¶4} Attached to St. Germain's complaint were two affidavits, the first by Jennifer Smith, who was the tenant on the lease at 843 ½ Uncapher. Smith's affidavit stated that she witnessed St. Germain fall down the stairs, and that she had previously requested that Newell fix the railing. (Doc. No. 1). The second

affidavit was made by Kathy Pitchford, who stated that she nearly fell one time when leaving Smith and St. Germain's residence while using the handrail when the handrail pulled away from the wall. (*Id.*)

**{¶5}** On March 25, 2014, Newell filed an answer denying negligence and asserting a number of affirmative defenses. (Doc. No. 6).

**{¶6}** On October 17, 2014, a deposition was taken of St. Germain. At his deposition St. Germain testified that Jennifer Smith leased the apartment at 843 ½ Uncapher from Newell, and that St. Germain was not on the lease but was staying with Smith. St. Germain testified that Newell was aware St. Germain was residing with Smith.

**{¶7}** Regarding the incident in question, St. Germain testified that sometime between 8 p.m. and 10 p.m. on January 29, 2013, he was going down a stairway at the apartment using the upper handrail when the handrail came out and he fell down the stairs. (St. Germain Depo. at 38-39). As a result of the fall, St. Germain was taken to the hospital. St. Germain testified that he broke his tibia and suffered a concussion, but was ultimately released from the hospital later that night.[1] (*Id.* at 14, 65).

---

[1] When questioned about whether the fall down the stairs resulted in any long-term injuries other than the broken tibia, St. Germain's deposition testimony was rather unclear. St. Germain testified to a number of lingering maladies from multiple, serious, prior vehicle accidents and lasting injuries from his military service. One injury St. Germain mentioned was a traumatic brain injury that left him with frequent headaches.

**{¶8}** St. Germain testified that the apartment he shared with Smith was the upper unit in a house that had been subdivided into two apartments, a lower unit and an upper unit. St. Germain testified that the stairway where he fell led up to the apartment he shared with Smith, but it was not a common entrance; it only led to their upstairs apartment. (*Id.* at 45). St. Germain testified that the set of stairs was the only way to get to and from his apartment. (*Id.*) Photographs used at the deposition show that the stairway was carpeted and led to a door at the bottom of the stairs that contained a lock. (St. Germain Depo. Def.'s Exs. A, B).

**{¶9}** As to the railing specifically, St. Germain testified that there were actually two separate railings that each covered approximately half of the staircase, and that it was the upper half of the railing that broke, causing him to fall. St. Germain testified that the lower railing—closer to the bottom of the stairs—was metal, and the upper railing—closer to the top of the stairs—was wooden and had been loose prior to this incident. (St. Germain Depo. at 45, 47). St. Germain testified that prior to the incident the wooden handrail would come off the wall slightly and then slide back on when it was used. He testified that he himself and others had told Newell about the loose railing. (Tr. at 47).

**{¶10}** On December 11, 2014, a deposition was taken of Kathleen Pitchford who testified that she was friends with St. Germain and Smith and that she regularly stopped at their apartment. Pitchford testified that on one such occasion

when she was leaving the wooden part of the handrail came loose while she was using it and she almost fell, but was caught by her husband who was also descending the stairs. Pitchford testified that she told St. Germain and Smith of the incident, and that she believed they had told Newell about the handrail.

{¶11} Also on December 11, 2014, Newell was deposed. Newell testified that the stairway where St. Germain allegedly fell was an interior stairway that had two separate handrails that did not connect. Newell testified that he had never been informed of any problem with the railings. Newell also testified that the first he had heard of St. Germain falling was a couple of weeks into February when Newell stopped to collect rent and Smith informed Newell that St. Germain was in jail and he had the rent money so Smith could not pay. Newell indicated that it was at that time Smith informed him of St. Germain falling on the stairs. Newell testified that from what he understood Smith and St. Germain had a fight and St. Germain "chased her down the steps and fell and broke his leg." (Newell Depo. at 13). Newell testified that he checked the railing at that time and it was "tight" and there was nothing wrong with it. (*Id*. at 14).

{¶12} On January 16, 2015, Newell filed a motion for summary judgment arguing that St. Germain was on notice of any defect with the railing and that any issue with the railing was open and obvious, removing any potential liability for negligence. (Doc. No. 18).

**{¶13}** On February 3, 2015, St. Germain filed a memorandum contra to Newell's motion for summary judgment. In the memorandum, St. Germain argued that the loose railing was not open and obvious despite St. Germain's knowledge of it, and further that Newell had violated Revised Code provisions 5321.04(A)(2) and (A)(3), which read,

> **(A) A landlord who is a party to a rental agreement shall do all of the following:**
>
> **\* \* \***
>
> **(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;**
>
> **(3) Keep all common areas of the premises in a safe and sanitary condition[.]**

**{¶14}** St. Germain argued that Newell's violation of R.C. 5321.04(A)(2) and (A)(3) made Newell liable for Negligence per se and thus the open and obvious doctrine would not apply.[2] (Doc. 21).

**{¶15}** On February 13, 2015, Newell filed his reply brief in support of summary judgment. In the reply, Newell argued that the open and obvious doctrine applied if there was no breach of R.C. 5321.04. Newell argued there was

---

[2] We would note that the first time Negligence per se based on a violation of R.C. 5321.04 was mentioned was in St. Germain's memorandum contra to Newell's summary judgment motion. Prior to that point there was no amendment to the complaint made to add a claim of negligence per se. At least two courts have stated that since Civ.R. 8 does not require particularity in pleadings and since "'negligence and negligence per se are so closely intertwined'" a separate pleading for negligence per se is not necessary. *Collier v. Libations Lounge, L.L.C.*, 8th Dist. Cuyahoga No. 97504, 2012-Ohio-2390, ¶ 24, quoting *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Quaranta,* 7th Dist. Mahoning No. 01 CA 60, 2002–Ohio–1540, ¶ 42. We make no formal endorsement of the findings in *Collier* and *Lone Star* because the issue is not before this Court, and Newell did not object. Similarly the trial court treated the negligence per se argument as though it had been properly alleged and therefore we will as well.

no breach of R.C. 5321.04(A)(2) because a loose railing does not render an apartment unfit or uninhabitable. (Doc. No. 24). Newell argued that there was no breach of R.C. 5321.04(A)(3) because the stairway was not a "common area" as it was only used and accessed by Smith and St. Germain and their guests. (*Id*.)

**{¶16}** On February 24, 2015, the trial court filed its entry ruling on summary judgment. The trial court determined that St. Germain was aware of the loose railing prior to falling, making it open and obvious. As to the negligence per se issues, the trial court held as follows.

> **In the case of <u>Taylor v Alexander,</u> 86-LW-2151 (Trumbull Cty. Of App. 1986), [sic] the Trumbull County Court of Appeals held that while R.C. 5321.04(A)(2) speaks in terms of "fitness and habitability", the appellant did not contend that the absence of a handrail made the premises unfit for human habitation. Rather, the common law warranty of habitability deals with situations where the premises contained defective wiring, heat or water shortages, vermin infestations, etc. It cannot seriously be contended that the lack of a handrail, in and of itself, renders the premises substantially or wholly uninhabitable. Consequently, R.C. 5321.04(A)(2) cannot be used as a basis for imposing liability on appellee.**

> **\* \* \***

> **After construing the evidence most strongly in favor of the Plaintiff, as this Court is required to do, the Court finds that reasonable minds can only come to the conclusion that a loose handrail on the stairway did not render the rental premises unfit and uninhabitable, at the time the Plaintiff suffered his injury. Thus, R.C. Section 5321.04(A)(2) is not available to impose per se negligence liability on the Defendant.**

> **Turning next to * * * 5321.04(A)(3) * * * [a] review of the record reveals that the stairway on which the Plaintiff was injured, was not in a common area, but was, rather, an interior stairway separate from any entrance to the downstairs apartment.**
>
> **As the stairway on which the Plaintiff was injured was not a common area, the Plaintiff cannot use R.C. 5321.04(A)(3) as a basis upon which to impose [per] se negligence liability upon the Defendant.**

(Doc. No. 25).

**{¶17}** The trial court thus granted summary judgment to Newell. On February 24, 2015, the trial court filed a judgment entry dismissing St. Germain's complaint with prejudice. (Doc. No. 26). It is from this judgment that St. Germain appeals, asserting the following assignment of error for our review.

**ASSIGNMENT OF ERROR**
**THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS THERE REMAINED A DISPUTED ISSUE OF MATERIAL FACT AND DEFENDANT-APPELLEE WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

**{¶18}** In his assignment of error, St. Germain argues that the trial court erred in granting Newell's motion for summary judgment. Specifically, St. Germain contends that the railing was not objectively open and obvious, making

Newell potentially liable under common law negligence, and that Newell violated R.C. 5321.04(A)(2) and (A)(3), making him liable for negligence per se.[3]

*Summary Judgment Standard*

**{¶19}** An appellate court reviews a grant of summary judgment de novo, without any deference to the trial court. *Mercer Health v. Welling*, 3d Dist. Mercer No. 10-14-05, 2014-Ohio-5626, ¶ 16, citing *Conley–Slowinski v. Superior Spinning & Stamping Co.,* 128 Ohio App.3d 360, 363 (6th Dist.1998). A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, ¶ 12 (Citation omitted).

**{¶20}** The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler,* 38 Ohio St.3d 112, syllabus (1988). The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case.

---

[3] We would note initially that while St. Germain was not the tenant on the lease, in *Mann v. Northgate Investors, L.L.C.*, 138 Ohio St.3d 175, 178, 2014-Ohio-455 (2014), the Ohio Supreme Court determined that a landlord owes a tenant's guest the same duty he or she owes to the tenant. *Mann* at ¶ 33.

*Dresher v. Burt,* 75 Ohio St.3d 280, 292, 1996–Ohio–107. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the nonmoving party to produce evidence on any issue which that party bears the burden of production at trial. *See* Civ.R. 56(E); *Mercer Health*, *supra*, at ¶ 17.

*Common Law Negligence Claim*

**{¶21}** In this case, St. Germain first argues that summary judgment was improper because the loose railing was not open and obvious, making Newell liable for common law negligence. St. Germain claims that while he admittedly knew of the loose railing prior to falling, the question was not whether he knew about the railing, but rather whether it would have been discernable to a reasonable person.

**{¶22}** Under the open and obvious doctrine, "a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious." *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 80, 2003-Ohio-2573, ¶ 5 (2003), citing *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph one of the syllabus.

**{¶23}** " '[T]he open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect

themselves.' " (Emphasis added.) *Armstrong, supra*, at ¶ 5, quoting *Simmers v. Bentley Constr. Co.,* 64 Ohio St.3d 642, 644 (1992).

**{¶24}** The open and obvious doctrine has not only been applied where a person would reasonably be expected to discover a hazard, but also where the tenant had actual knowledge of a particular hazard or condition. *Mounts v. Ravotti*, 7th Dist. Mahoning No. 07MA182, 2008-Ohio-5045, ¶ 51 (where tenant was aware of water on steps prior to fall and he had slipped numerous times in the past, condition was open and obvious); *Stewart v. AMF Bowling Ctrs., Inc.*, 3d Dist. Hancock No. 5-10-16, 2010-Ohio-5671, ¶¶ 16-17 (where plaintiff was aware of step-down leading to bowling lanes, had previously been to bowling center and was aware of its set-up, hazard was open and obvious); *see also Hayes v. Murtha,* 10th Dist. Franklin No. 96APE04-512, (Oct. 1996) 1996 WL 589268 (summary judgment properly awarded where plaintiff knew "that the sidewalks were uneven and over-grown with shrubbery and that the weather conditions overnight had cause the sidewalks to be ice-covered.").

**{¶25}** Moreover, "[a] plaintiff's failure to avoid a known peril is not excused by the fact that he 'did not think,' or 'forgot.' " *Raflo v. Losantiville Country Club*, 34 Ohio St.2d 1, 3 (1973) (citations omitted). Here, St. Germain readily admitted that he was aware that the railing was loose and that it had been loose for some time. That St. Germain ignored that "known peril" or "forgot,"

does not alter the fact that St. Germain was completely aware of the loose railing. Accordingly, St. Germain's argument that we should ignore his knowledge of the loose railing in favor of applying an objective standard as though he had never been aware of the railing is not well-taken.

*Negligence Per Se Claims*

{¶26} St. Germain next argues that Newell was liable for negligence per se for violating R.C. 5321.04(A)(2) and (A)(3). In *Mann v. Northgate Investors, L.L.C.*, 138 Ohio St.3d 175, 178, 2014-Ohio-455 (2014), the Ohio Supreme Court stated that if a violation of a statutory duty under R.C. 5321.04(A)(2) or (A)(3) "constitutes negligence per se and obviates the open-and-obvious-danger doctrine." *Mann* at ¶ 33. Thus if St. Germain could establish that Newell violated R.C. 5321.04(A)(2) or (A)(3), he would have a valid negligence per se claim notwithstanding the open and obvious doctrine.

{¶27} Revised Code 5321.04(A)(2) states that, "A landlord who is a party to a rental agreement shall * * * [m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a *fit and habitable condition*[.] (Emphasis added.) In the trial court's decision, the trial court found that a loose railing does not render a premises unfit or uninhabitable such that liability under R.C. 5321.04(A)(2) would be invoked. We agree.

**{¶28}** In *Avila v. Gerdenich Realty Co.*, 6th Dist. Lucas No. L-07-1098, 2007-Ohio-6356, ¶ 9, the Sixth District Court of Appeals held that, "'The meaning and interpretation of the statutory phrase 'fit and habitable' will not be liberally construed to include that which does not clearly fall within the import of the statute.'" *Avila* at ¶ 9 quoting *Parks v. Menyhart Plumbing and Heating Supply Co., Inc.*, 8th Dist. Cuyahoga No. 75424 1999 WL 1129591 (Dec. 9, 1999), citing *LaCourse v. Fleitz*, 28 Ohio St.3d 209 (1986). The Sixth District continued, adding, " 'Fitness and habitability entails such defects as lack of water or heat, faulty wiring, or vermin infestation,' and does not include items such as missing handrails." *Avila* quoting *Parks,* citing *Taylor v. Alexander*, 11th Dist. No. 3550, 1986 WL 7800 (July 11, 1986). The Sixth District's definition of fitness and habitability has been similarly utilized by multiple other Ohio Appellate Courts. *See Aldridge v. Englewood Village, Ltd.*, 2d Dist. No. 10251, 1987 WL 15015 (July 22, 1987); *Mullins v. Grosz*, 10th Dist. Franklin No. 10AP-23, 2010-Ohio-3844, ¶ 33; *Parks* (8th Dist.), *supra*, and *Taylor* (11th Dist.), *supra*.

**{¶29}** Based on what these courts have determined renders a premises unfit or uninhabitable, the bar for finding that a landlord has violated R.C. 5321.04(A)(2) is high and would not include a loose handrail. In fact, multiple courts have determined that the complete lack of a handrail does not render a premises unfit or uninhabitable, so we fail to see how a defective handrail would

render an entire premises unfit or uninhabitable. *See Mullins*; *Taylor*, *supra*. Thus we cannot find that the trial court erred in determining that a loose handrail did not make the apartment unfit or uninhabitable to invoke liability under R.C. 5321.04(A)(2).

{¶30} Next, St. Germain argues that Newell should be liable for negligence per se under R.C. 5321.04(A)(3), which states that a landlord must, "[k]eep all common areas of the premises in a safe and sanitary condition[.]" The trial court granted Newell summary judgment on this issue, finding that the handrail and staircase in question were not in "common areas." We agree.

{¶31} First, St. Germain specifically testified in his deposition that the stairway into his apartment was *not* a common stairway in the following exchange.

> **Q: The stairway in these photographs is that a common entrance [the neighbors] would also use?**
>
> **A: No, that was to the upstairs apartment and then their apartment was downstairs.**

(Tr. at 45). Notwithstanding St. Germain's direct testimony, photographs of the stairway in question make clear that the stairway was not a common stairway. The stairway was a carpeted interior stairway that led up into St. Germain's apartment, and the door at the bottom of the stairway had a locking mechanism. (Def's Depo Exs. A, B). The door at the top of the stairs also appears to be a sliding door. (Def's Depo Ex. D).

**{¶32}** Furthermore, in Newell's deposition, he testified that the downstairs apartment had its own separate stairway leading into that apartment. (Newell Depo. at 7). In addition, Newell also testified to an instance in his deposition where he was standing outside the residence talking to Smith asking her if she would allow him inside to inspect the stairway, further implying that Smith (and thus St. Germain) held exclusive control over the stairway. (Newell Depo. at 14). While the stairway may have been used by guests of St. Germain and Jennifer Smith (the tenant on the lease), the only indication in the record was that the stairway was not "common." Therefore, we cannot find that the trial court erred in granting Newell summary judgment on this issue.

**{¶33}** Accordingly, having found no error prejudicial to St. Germain in the particulars assigned, St. Germain's assignment of error is overruled and the judgment of the Marion County Common Pleas Court is affirmed.

*Judgment Affirmed*

**ROGERS, P.J. and PRESTON, J., concur.**

**/jlr**