[Cite as *Dabe v. M.K. Hufford Co., Inc.*, 2022-Ohio-2802.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| LINDA DABE | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2022-CA-11 |
| | : | |
| v. | : | Trial Court Case No. 2020-CV-299 |
| | : | |
| M.K. HUFFORD CO., INC. dba | : | (Civil Appeal from |
| WESTMONT PLACE APARTMENTS, | : | Common Pleas Court) |
| et al. | : | |
| | : | |
| Defendants-Appellees | | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of August, 2022.

. . . . . . . . . . .

JOHN A. SMALLEY, Atty. Reg. No. 0029540, 131 North Ludlow Street, Suite 1400, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

HEATHER R. ZILKA, Atty. Reg. No. 0070538 and NICHOLAS S. BOBB, Atty. Reg. No. 0090537, 5880 Innovation Drive, Dublin, Ohio 43016
    Attorneys for Defendants-Appellees

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Plaintiff-Appellant, Linda Dabe, appeals from a summary judgment granted in favor of Defendants-Appellees, M.K. Hufford Co., Inc. dba Westmont Place Apartments and Westmont Place, LLC (collectively "Westmont"). According to Dabe, the trial court erred because there were genuine issues of material fact concerning whether Westmont, as a landlord, violated the Landlord-Tenant Act ("LTA") by failing to keep a walkway in a common area in a safe condition under R.C. 5321.04(A)(3) and by failing to keep the premises in a fit and habitable condition as required by R.C. 5321.04(A)(2).

**{¶ 2}** We conclude that the trial court did not err in granting summary judgment to Westmont. Dabe fell on a sidewalk on the premises that had a difference in pavement height of two inches or less. R.C. 5321.04(A)(2) did not apply because the defect did not render the premises unfit and uninhabitable as that term has been interpreted. Furthermore, because the defect was insubstantial under the "two-inch rule" and there were no attendant circumstances, the landlord did not violate the requirement in R.C. 5321.04(A)(3) to keep common areas safe and sanitary. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 3}** On August 14, 2020, Dabe filed an action against Westmont, alleging that she had been injured as a result of a dangerous and unsafe condition on premises that Westmont owned, operated, or maintained. The only claims raised related to violation of the LTA, which is codified in R.C. Chap. 5321.

{¶ 4} Westmont filed an answer on September 14, 2020, denying liability and asserting various affirmative defenses. In July 2021, the court set a trial date for March 28, 2022. In the meantime, however, Westmont filed a motion for summary judgment. Dabe then responded to the motion on December 21, 2021. Westmont filed its reply the following day, as well as a motion to strike an affidavit attached to Dabe's summary judgment response. Both sides also filed depositions with the trial court. On January 3, 2022, the trial court granted Westmont's summary judgment motion. In a one-page decision, the court found that the defect was less than two inches and was open and obvious. Entry (Jan. 3, 2022), p. 1. The court did not discuss the LTA. Dabe then filed a timely notice of appeal.

{¶ 5} The depositions filed in the trial court reveal the following facts, construed most favorably to Dabe. The incident in question occurred on August 18, 2018, in front of apartment A-1, which was located at the Westwood Place Apartments in Springfield, Ohio. Laura Perry Depo., p. 5, and Linda Dabe Depo., p. 34. At the time, Dabe's sister, Barbara Shirey, lived in that apartment. Dabe Depo., p. 34.

{¶ 6} Because Shirey could not get out and do things for herself, Dabe helped her by doing grocery shopping and taking her to doctor's appointments. *Id.* At the time of the accident, Dabe was visiting Shirey a couple of times a week. *Id.* at p. 35. The fall occurred on a Saturday, which was generally the day Dabe took care of getting Shirey's groceries. *Id.* at p. 35.

{¶ 7} Shirey's apartment had a front entrance as well as a back door that went out to a courtyard and a big garage. Shirey did not use the front entrance often, and Dabe

usually picked Shirey up at the back entrance; Dabe also dropped things off at the back entrance.  *Id.* at p. 38.

{¶ 8} Dabe did not know if Shirey had complained to maintenance about the sidewalk leading to the front entrance, but Dabe had complained twice to a gentleman named Norm, who was the maintenance man.  *Id.* at p. 39-40, 45, and 73-74.  The first time, Dabe told Norm that the sidewalk was bad.  *Id.* at p. 45.  The second time, Dabe asked Norm when he was going to repair the sidewalk, and he responded that no one had told him to fix it.  *Id.* at p. 46 and 73.  Dabe was not aware if Norm had told anyone in the office that there was a problem with the sidewalk.  *Id.* at p. 46.  At the time they spoke, Norm was mowing grass or doing something in the yard.  These conversations occurred several months before Dabe's fall.  *Id.* at p. 47.

{¶ 9} As to the defects in the sidewalk leading to the front of Shirey's apartment, the sidewalk was composed of big squares that were each three or four feet wide.  They were raised one to two inches.  Dabe usually saw the raised part from one direction, but not from the other.  The defect was along certain squares of the sidewalk, not all the squares.  Places were lifted up.  Dabe Depo., p. 48.  Dabe's recollection was that the left side of the sidewalk was raised up about one to two inches, and the uneven sidewalk would have been visible as she walked up to the front door.  *Id.* at p. 49 and 142-143.

{¶ 10} On the day of her fall, Dabe had picked up two bags of groceries for Shirey.  The bags did not obstruct her ability to see the sidewalk.  The weather was nice and sunny.  The time was toward evening, but the sun had not yet set.  *Id.* at p. 51.  Dabe did not recall the sidewalk being wet.  *Id.* at p. 53.

{¶ 11} The apartment itself faced Westmont Drive and was on the far left of a row of apartment units. *Id.* at p. 53-55 and Dabe Depo. Exhibits A and B. When Dabe arrived, she parked on the street, with the driver's side of her car facing the street. The trunk of the car was close to where a sidewalk went up to Shirey's unit. *Id.* at p. 56-57. Dabe removed the groceries from the trunk and started walking up to the front door. Dabe was just dropping off the groceries, as she had to pick up another sister who was at the hospital. *Id.* at p. 44-45, 52, and 57. Dabe walked through the grass, onto a sidewalk that ran parallel to the street. She then went down the sidewalk that led to Shirey's front door. *Id.* at p. 57-58. Dabe fell in the first or second section of that sidewalk. *Id.* at p. 58-59 and Dabe Depo. Ex. B. The sections were not broken but were raised. Dabe Depo., p. 59.

{¶ 12} Dabe was wearing tennis shoes that day and did not know which foot hit the uneven part of the sidewalk. *Id.* at p. 63. She recalled getting her foot caught and going face-down on the sidewalk. *Id.* at p. 64. Shirey did not see the fall, but she called 911, which received the dispatch at around 7:57 p.m.; responders arrived about ten minutes later. *Id.* at p. 65 and 67.

{¶ 13} Dabe was initially taken to Springfield Regional Hospital. She was then transferred to Miami Valley Hospital around midnight and was discharged on August 20, 2018. *Id.* at p. 78 and 80-81. As a result of the accident, Dabe sustained facial injuries on the left side of her face, rib fractures on the left side, and bruising on her neck, arms, and legs. *Id.* at p. 81 and 85-86.

{¶ 14} At the time of the accident, Laura Perry managed apartments and leasing

for Westmont. Perry had managed the apartments for about two and a half years. Perry Depo., p. 5-6. A few days after the accident, someone called into the office and reported that a fall had occurred in front of apartment A-1. *Id.* Perry did not know who had received the call, but the notice was forwarded to maintenance to let them know that someone had fallen. *Id.* at p. 7-8. Perry was not aware that Shirey had lodged a complaint about the sidewalk before the fall and had not noticed the sidewalks to be in disrepair there.[1] *Id.* at p. 10 and 12. Perry stated that if she had received a complaint about a dangerous sidewalk, she would have fixed it or would have authorized a repair. *Id.* at p. 10. If Perry had seen a mismatch of the sidewalk, she would have brought it to the attention of Paul Dennis, who ran the maintenance department. *Id.* at p. 8 and 13.

{¶ 15} Paul Dennis had worked for Westmont doing full-time maintenance since about 2009, but he had done maintenance for the Westmont Place apartments for only about a month before the fall. Dennis Depo., p. 4-5. Before that, Norm Claypool had done the maintenance. *Id.* at p. 5. When Dennis took over, he did not receive any information from Claypool about issues with the property. *Id.* at p. 7. At that time, Dennis looked at the property and evaluated its condition. *Id.* He was at the property multiple times a week. He had not been made aware of complaints Shirey had about the sidewalk before the day of the fall, was not aware that Dabe had approached maintenance about fixing the sidewalk, and was not aware of the condition of the sidewalk before the fall. *Id.* at p. 7 and 13.

{¶ 16} A few days after the fall, Dennis was informed by one of the office staff that

---

[1] There was no evidence that Shirey complained about the sidewalk before Dabe fell.

a fall had occurred, and he checked it out. He then called the property owner, Mike Hufford, and asked his opinion on what needed to be done. They agreed to make some repairs. They tore up the concrete and reformed and re-poured concrete. *Id.* at p. 8. Repairs were made to the sidewalk at Apartment A-1 as well as a few others. *Id.* at p 9. Dennis re-laid only a portion of Shirey's sidewalk that was not level. There were areas that were not raised up and did not present a problem. *Id.*

{¶ 17} After considering this evidence, the trial court granted summary judgment to Westmont.

## II. Propriety of Granting Summary Judgment

{¶ 18} Dabe's sole assignment of error states that:

The Trial Court Erred in Granting the Defendants-Appellees' Motion for Summary Judgment When the Defendants-Appellees' Duty is Governed by the Landlord Tenant Act.

{¶ 19} Under this assignment of error, Dabe makes several arguments. First, she notes that violations of the LTA constitute negligence per se. Dabe further argues that a factual issue exists concerning whether the sidewalk where she fell was part of the common premises, which Hufford was required to keep it in a safe condition pursuant to R.C. 5321.04(A)(3). Dabe also contends that even if the walkway was not in a common area, material issues of fact exist concerning whether Hufford failed to keep the premises in a fit and habitable condition as required by R.C. 5321.04(A)(2). And finally, Dabe states that even if the defect was only two inches in height, there was a material issue of

fact concerning whether the uneven walkway was in an unsafe condition in the common area.

{¶ 20} In response, Westmont contends that R.C. 5321.04 does not apply to this case because the sidewalk was a "public sidewalk" and defects in such sidewalks are not covered by the LTA. In addition, Westmont argues that defects of less than two inches do not qualify under R.C. 5321.04(A)(2) because such defects do not render the premises unfit and uninhabitable. Finally, Westmont contends that even if the sidewalk were in a common area, the uneven elevation was insubstantial and did not render the premises unsafe for purposes of R.C. 5321.04(A)(3). In this regard, Westmont relies on the "two-inch rule" and the fact that the defect was obvious and open. Before we address these points, we will outline the applicable summary judgment standards.

A. Summary Judgment Standards

{¶ 21} We review summary judgments de novo, "which means that we apply the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.). In de novo review, we independently review trial court decisions and accord them no deference. *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997).

{¶ 22} "Summary judgment is appropriate if (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and

construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). " 'As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *Turner v. Turner*, 67 Ohio St.3d 337, 340, 617 N.E.2d 1123 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B.   Discussion

### 1.   Does the Landlord Tenant Act Apply?

{¶ 23} Westmont contends that R.C. 5321.04, which is part of the LTA, does not apply because Dabe fell on a public sidewalk.   Before addressing this point, we note that actions for injuries caused by defects can be brought against landlords based on both common law negligence and the LTA.   As indicated, Dabe's claim was brought only under the LTA.

{¶ 24} Under the common law, "in order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom."   *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285, 423 N.E.2d 467 (1981).   "At common law, a landlord, not in possession and control of the rental property, was not liable for injuries occurring on the premises."   *Shroades v. Rental*

*Homes, Inc.*, 68 Ohio St.2d 20, 23, 427 N.E.2d 774 (1981). However, as more modern ideas evolved, a majority of states abolished landlords' traditional immunity in whole or in part. *Id.* at 24. "In light of the previous common law immunity of landlords, and in recognition of the changed rental conditions and the definite trend to provide tenants with greater rights, the General Assembly enacted R.C. Chapter 5321 [the LTA] in 1974." *Id.* at 24-25. This "was an attempt to balance the competing interests of landlords and tenants," and the remedies in the LTA were cumulative to those provided by the common law. *Id.* at 25.

{¶ 25} As relevant here, R.C. 5321.04(A) provides that:

A landlord who is a party to a rental agreement shall do all of the following:

* * *

(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;

(3) Keep all common areas of the premises in a safe and sanitary condition.

{¶ 26} Violations of R.C. 5321.04(A)(2) and (3) both constitute negligence per se. *Mann v. Northgate Investors, L.L.C.*, 138 Ohio St.3d 175, 2014-Ohio-455, 5 N.E.3d 594, ¶ 12 and 31-32. "The concept of negligence per se allows the plaintiff to prove the first two prongs of the negligence test, duty and breach of duty, by merely showing that the defendant committed or omitted a specific act prohibited or required by statute; no other facts are relevant." *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495,

909 N.E.2d 120, ¶ 15, citing *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 567-568, 697 N.E.2d 198 (1988).

{¶ 27} However, "a finding of negligence per se does not necessarily result in liability: 'proximate cause for the injuries sustained must be established.' " *Mann* at ¶ 12, quoting *Shroades*, 68 Ohio St.2d at 25, 427 N.E.2d 774. "Further, a plaintiff tenant would also have to show that 'the landlord received notice of the defective condition of the rental premises, that the landlord knew of the defect, or that the tenant had made reasonable, but unsuccessful, attempts to notify the landlord.' " *Id.*, quoting *Shroades,* 68 OhioSt.2d 20, 26, 427 N.E.2d 774. The notice can be either constructive or actual. *Rawlings v. Springwood Apts of Columbus, Ltd.*, 2018-Ohio-4845, 125 N.E.3d 312, ¶ 41 (10th Dist.), citing *Sikora v. Wenzel*, 88 Ohio St.3d 493, 495, 727 N.E.2d 1277 (2000).

{¶ 28} The duties that a landlord owes to tenants also apply to " 'persons lawfully upon the leased premises * * *.' " *Mann* at ¶ 13, quoting *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 644 N.E.2d 291 (1994), syllabus. These duties include common areas of the property. *Id.* at ¶ 22, citing *Shump* at 420.

{¶ 29} As support for the claim that the LTA is inapplicable to defects in public sidewalks, Westmont relies on *Ryder v. McGlone's Rentals*, 3d Dist. Crawford No. 3-09-02, 2009-Ohio-2820. According to Westmont, *Ryder's* facts are remarkably like those in the case before us. Westmont Brief, p. 8. We disagree. The cases are similar in that the plaintiffs both fell on sidewalks. However, that is where the resemblance ends. *Ryder* differs in that the plaintiff in that case fell "[w]hile traversing the public sidewalk abutting the street in front of the property." *Id.* at ¶ 2.

{¶ 30} Relying on the definition of "residential premises" in R.C. 5321.01(C), the court concluded in *Ryder* that "a public sidewalk does not fall within the definition of 'residential premises,' particularly when read in pari materia with the definition of 'tenant,' which is defined as a person entitled to use and occupy the residential premises to the exclusion of others. Clearly, the public sidewalk is not for the tenant's use to the exclusion of others, as it is open for use to the public." *Id.* at ¶ 21. The court therefore held that the plaintiff could "not seek redress under R.C. 5321.04 of the Landlord Tenant Act." *Id.*

{¶ 31} In contrast to *Ryder*, the sidewalk on which Dabe fell did not abut the street. Instead, the pictures show that a public sidewalk abutted the street, which is common in both residential and commercial areas. Individual sidewalks were then positioned perpendicular to the public sidewalk and led to individual units occupied by tenants. *See* Exs. A and B. Dabe crossed the public sidewalk to get to the sidewalk leading to Shirey's unit, but she did not fall on the public sidewalk. Instead, she fell on the sidewalk leading to Shirey's unit.

{¶ 32} If the sidewalk leading to Shirey's unit were part of the common area, Westmont would have a duty under R.C. 5321.04(A)(3) to keep the area "safe" and "sanitary." R.C. 5321.01, which is the definition section of the LTA, does not define "common areas." However, common areas generally include "areas such as sidewalks, parking lots, foyers, and hallways which [are] under the control of the lessor and which [are] reasonably necessary to the use and enjoyment of the leased property." *Hau v. Gill*, 9th Dist. Lorain No. 98CA007061, 1999 WL 492633, *5 (July 14, 1999). *Accord Lilly*

*v. Bradford Invest. Co.*, 10th Dist. Franklin No. 06AP-1227, 2007-Ohio-2791, ¶ 24.

{¶ 33} R.C. 5321.04(A)(2) similarly imposes a duty on landlords to "make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." This part of the statute does not specifically refer to "common areas." Instead, it refers generally to the "premises." R.C. 5321.01(C) defines "residential premises" as "a dwelling unit for residential use and occupancy and the structure of which it is a part, the facilities and appurtenances in it, and the grounds, areas, and facilities for the use of tenants generally or the use of which is promised the tenant."

{¶ 34} The trial court record does not contain a copy of the lease agreement, and we have no idea if the lease defines "residential premises" or "common areas." Nonetheless, the facts in the record indicate that the sidewalks leading to each unit were part of the property belonging to Westmont and were under Westmont's control. The sidewalks were also obviously furnished for the use of tenants, as they provided a means of accessing the apartments and were reasonably necessary to the tenants' use and enjoyment of the leased property. As such, the sidewalks appear to be part of the common area. At the least, a genuine issue of material fact exists. Since the definition of residential premises also covers areas provided for the use of tenants generally, the sidewalks leading to the apartments could also fit within this definition.

{¶ 35} Notably, the sidewalks were not "public" sidewalks, as in *Ryder*, which the general public uses to travel up and down public streets. As Dabe notes, the City of Springfield defines "sidewalk" as "that portion of the street between the curb line and the adjacent property line intended for the use of pedestrians." Springfield Codified

Ordinances 101.02(s).   As indicated, Dabe did not fall on that sidewalk.

{¶ 36} The City of Springfield does require property owners to "keep the sidewalks, curbing, gutters and driveways in the *public right of way* in front of and abutting upon such lot or parcel of land constantly in good repair and free from nuisances."   (Emphasis added.)   Springfield Codified Ordinances 903.11.   However, this is a duty that all property owners (not just landlords) have.   And, again, sidewalks leading to the tenants' unit would not be in the public right of way.

{¶ 37} As noted, the LTA imposes duties on landlords, and there is no logical reason to exclude situations where landlords choose to build sidewalks or any other structures on their own property.   Furthermore, liability is not unrestricted, since landlords are only liable for " 'persons lawfully upon the leased premises.' "   *Mann*, 138 Ohio St.3d 175, 2014-Ohio-455, 5 N.E.3d 594, at ¶ 13, quoting *Shump*, 71 Ohio St.3d 414, 644 N.E.2d 291, at syllabus.   This includes guests injured in common areas.   *Id.* at ¶ 23.

{¶ 38} Accordingly, R.C. 5321.04 does apply to this case, and Westmont could be potentially liable under either R.C. 5321.04(A)(2) or R.C. 5321.04(A)(3).   Therefore, Westmont is incorrect in contending that the statute is inapplicable and is a reason to affirm the trial court's judgment.   As we said, the trial court made no findings on this point and did not discuss the LTA.

2.   Applicability of R.C. 5321.04(A)(2)

{¶ 39} Dabe also contends that genuine issues of material fact exist with respect to whether Westmont failed to keep the premises in a fit and habitable condition under

R.C. 5321.04(A)(2). The trial court found that the defect in the sidewalk was open and obvious and insubstantial and did not give rise to liability. Entry at p. 1, citing *Kimball v. City of Cincinnati*, 160 Ohio St. 370, 116 N.E.2d 708 (1953). Again, the trial court did not consider these points in the context of the LTA; it simply found no liability based on these principles.

{¶ 40} Westmont argues that there was no defect in the sidewalk because the elevation change (two inches or less) did not render the sidewalk "unfit or uninhabitable" under R.C. 5321.04(A)(2). Westmont Brief at p. 14. According to Westmont, this part of the statute must be interpreted to mean that "the premises cannot be lived in." *Id.*

{¶ 41} As noted, R.C. 5321.04(A)(2) requires landlords to "[m]ake all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." Our court has said that "[f]itness and habitability entails such defects as lack of water or heat, faulty wiring, or vermin infestation." *Aldridge v. Englewood Village, Ltd.*, 2d Dist. Montgomery No. 10251, 1987 WL 15015, *3 (July 22, 1987). We also stressed in *Aldridge* that "[t]he meaning and interpretation of the statutory phrase 'fit and habitable' will not be liberally construed to include that which does not clearly fall within the import of the statute." *Id.*, citing *LaCourse v. Fleitz*, 28 Ohio St.3d 209, 503 N.E.2d 159 (1986).

{¶ 42} *Aldridge* was decided long before the decision of the Supreme Court of Ohio in *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, which involved a landlord's "statutory duty to repair" under R.C. 5321.04(A)(2). *Id.* at ¶ 22 and 24.

{¶ 43} In *Robinson*, the landlord's contractor "removed a deteriorating retaining

wall on the side of [the tenant's] driveway, exposing the concrete footer." *Id.* at ¶ 2. Although the tenant was aware of the construction, she stepped onto an uneven slab of the footer and injured her foot. *Id.* The Supreme Court of Ohio concluded that the trial court erred in granting a directed verdict on the tenant's statutory claim. *Id.* at ¶ 25.

{¶ 44} The court noted evidence that the retaining wall was being torn down to be repaired, that stones in the driveway would be used to rebuild the wall, that the concrete footer was not exposed until the wall was torn down, and that contractors left debris in the driveway and had never returned to finish the work. The tenant fell three to five days after the wall was torn down. *Id.* at ¶ 24. Given these facts, the court held that "a jury should have been allowed to consider whether [the landlord] exercised reasonable diligence and care in repairing the wall or instead breached her statutory duty to repair." *Id.*

{¶ 45} The facts in *Robinson* clearly indicate that repairing the retaining wall did not render the premises uninhabitable on the grounds that *Aldridge* mentioned, i.e., "lack of water or heat, faulty wiring, or vermin infestation." Nonetheless, even after *Robinson*, courts have continued to construe R.C. 5321.04(A)(2) narrowly.

{¶ 46} For example, in *Goodman v. Dan Rich, LLC*, 8th Dist. Cuyahoga No. 109581, 2021-Ohio-690, the court found that *Robinson* "did not determine that the duty to repair is a separate requirement from keeping the premises in a fit and habitable condition." *Id.* at ¶ 29. *Goodman* involved a situation in which a tenant fell on a patio paver in July 2016. The tenant notified the landlord, who then asked a mason to inspect the patio. The mason found repair unwarranted at the time due to the patio's age and

condition; instead he recommended addressing extensive repair or replacement in the spring. After the inspection, the tenant continued to use the patio for several months. He then fell again, on a different paver, in November 2016. *Id.* at ¶ 3-5.

**{¶ 47}** After discussing *Robinson* and cases that had ordinarily interpreted "fit and habitable" to refer to the type of situations involved in *Aldridge*, the court found that "reasonable minds could not determine that repairs to the patio were reasonably necessary to put and keep the premises in a fit and habitable condition. In this regard, there is no evidence to demonstrate a defective condition that rendered the premises unfit and uninhabitable. Rather, the record clearly demonstrates that appellants continued to routinely use the patio and that the premises remained fit and habitable." *Id.* at ¶ 32.

**{¶ 48}** Other cases decided after *Robinson* have narrowly interpreted R.C. 5321.04(A)(2), and are consistent with the view taken in *Aldridge*. *See In re V.R.*, 1st Dist. Hamilton No. C-140230, 2014-Ohio-5061, ¶ 12, citing *Cipollone v. Hoffmeier*, 1st Dist. Hamilton No. C-060482, 2007-Ohio-3788, ¶ 22 ("R.C. 5321.04(A)(2) requires the defects in the premises to be 'so substantial as to amount to a constructive eviction' and constitute 'more than nuisances or trifles' "); *St. Germain v. Newell*, 3d Dist. Marion No. 9-15-14, 2015-Ohio-3713, ¶ 29 ("bar for finding that a landlord has violated R.C. 5321.04(A)(2) is high and would not include a loose handrail"); *Wenzke v. Baird*, 6th Dist. Lucas No. L-13-1244, 2014-Ohio-3069, ¶ 18-20 ("[t]he warranty is one of habitability and is not a warrant against all discomfort and inconvenience"); *Wilmoth v. Akron Metro. Hous. Auth.*, 9th Dist. Summit No. 27746, 2016-Ohio-3441, ¶ 21-22 ("serious deprivations of basic needs or threats to tenant's health or safety" are required; a "sloped walkway

with alleged nonstandard curb height does not violate the requirement of fitness and habitability"): *Wochele v. Veard Willoughby Ltd. Partnership*, 11th Dist. Lake No. 2017-L-062, 2017-Ohio-8807, ¶ 31 (cinderblock on lawn that tenant tripped over did not render premises uninhabitable); and *Arnett v. Mong*, 2016-Ohio-2893, 65 N.E.3d 72, ¶ 15-16 (12th Dist.) ("absence of gutters" did not make "home unfit or uninhabitable").

{¶ 49} One district has held that " 'the maintenance of the sole means of ingress to a rented residence certainly invokes the requirement of section (A)(2." *Mounts v. Ravotti*, 7th Dist. Mahoning No. 07 MA 182, 2008-Ohio-5045, ¶ 33, quoting *Crawford v. Wolfe*, 4th Dist. Scioto No. 01CA2811, 2002-Ohio-6163, ¶ 28. In *Mounts*, the court held that "[l]ack of gutters along with the condition of the steps having no drainage, may create a duty to fix those issues especially when it is occurring where the only means of ingress and egress are located." *Id*. at ¶ 37. Even if this view were correct, it would not apply here, as Shirey's apartment had two means of access. Dabe Depo., p. 38.

{¶ 50} Based on the above discussion, we agree with Westmont that summary judgment was appropriate on Dabe's claim to the extent that it was brought under R.C. 5321.04(A)(2). The defect in the sidewalk was not of such a type that would have rendered the premises unfit or uninhabitable as those terms have been interpreted. This leaves the question of whether genuine issues of material fact exist concerning Westmont's liability under R.C. 5321.04(A)(3).

### 3. Liability Under R.C. 5321.04(A)(3)

{¶ 51} R.C. 5321.04(A)(3) requires landlords to keep common areas in a "safe and

sanitary condition." According to Westmont, both the "open and obvious" doctrine and the "two inch rule" discharge a landlord's duty of ordinary care. We will address these items in turn.

### a. Open and Obvious Doctrine

{¶ 52} Ohio courts have long held that "[a]n occupier of premises is under no duty to protect a business invitee against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph one of the syllabus. "The rationale underlying this doctrine is 'that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.' " *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992).

{¶ 53} However, the Supreme Court of Ohio has said that "[i]f a violation of R.C. 5321.04(A)(3) constitutes negligence per se, a landlord may not rely upon the open-and-obvious doctrine to escape liability." *Mann*, 138 Ohio St.3d 175, 2014-Ohio-455, 5 N.E.3d 594, at ¶ 24. The court further observed in *Mann* that "[i]n *Robinson v. Bates*, 112 Ohio St.3d 17, 2006-Ohio-6362, 857 N.E.2d 1195, this court held that a landlord's failure to meet the statutory duty under R.C. 5321.04(A)(1) negates the open-and-obvious doctrine." *Id.*

**{¶ 54}** As a result, whether the defect in the sidewalk was open and obvious is not an issue in this case. It would only be a factor if Dabe had asserted a common law claim for negligence. However, she did not. *Compare Rawlings*, 2018-Ohio-4845, 125 N.E.3d 312, ¶ 24-33 and 39-47 (affirming summary judgment on common law negligence because wheel stop on which plaintiff tripped was "an open and obvious hazard," but reversing summary judgment on R.C. 5321.04(A(3) claim due to issues of fact concerning whether landlord "had constructive notice of a defective condition or, in other words, should have known of factual circumstances that caused a violation of the landlord's duty under R.C. 5321.04(A)(3) to keep common areas in a safe condition").

b. The Two-Inch Rule

**{¶ 55}** The trial court granted summary judgment based on the fact that the defect in the sidewalk did not exceed two inches. Entry at p. 1, citing *Kimball*, 160 Ohio St. 370, 116 N.E.2d 708.

**{¶ 56}** "The opinion in *Kimball*, and the case law that followed, applied a standard which involved the degree or extent of the sidewalk variation or imperfection which as a matter of law would not present a jury question on the issue of negligence. Those opinions held in effect that variations in elevation between adjacent sections of a sidewalk, or depressions, or the like, where the defects complained of involved changes in height of one-half of an inch to two inches, were only insubstantial imperfections creating no liability of the municipality to the one who fell while traversing them." (Footnote omitted.) *Cash v. City of Cincinnati*, 66 Ohio St.2d 319, 321, 421 N.E.2d 1275

(1981). In a later case, "the court extended the rule to privately owned or occupied properties." *Id.*, citing *Helms v. Am. Legion, Inc.*, 5 Ohio St.2d 60, 213 N.E.2d 734 (1966).

{¶ 57} In *Cash*, the court modified the "two-inch" rule to allow consideration of "attendant circumstances." *Id.* at 324. For example, in *Cash*, the court considered the fact that a pedestrian approaching a busy downtown intersection "necessarily has his attention diverted by traffic signal lights, by surrounding vehicular traffic, and by other pedestrian traffic along the same walkway." *Id.* The court also found significance in the time of day (a lunchtime rush), which would have obstructed the plaintiff's ability to see the defect. *Id.*

{¶ 58} In *Helms*, the court stressed that "no liability rests on the owner or occupier of private premises for minor imperfections perfections therein (here almost minimal in extent), which are commonly encountered and are to be expected and which are not unreasonably dangerous, representing 'trivial departures from perfection.' Otherwise, such owner or occupier would be placed in the position of an insurer, and the law does not go that far." *Helms* at 62.

{¶ 59} "To render a minor defect substantial, attendant circumstances must not only be present, but must create 'a greater than normal, and hence substantial, risk of injury.' " *Stockhauser v. Archdiocese of Cincinnati*, 97 Ohio App.3d 29, 33, 646 N.E.2d 198 (2d Dist.1994), quoting *Turner v. Burndale Gardens Co.*, 2d Dist. Montgomery No. CA-12807, 1991 WL 270662, *2 (Dec. 18, 1991). "The attendant circumstances must, taken together, divert the attention of the pedestrian, significantly enhance the danger of

the defect, and contribute to the fall." *Id.*

{¶ 60} No attendant circumstances were alleged here, nor does the record contain any evidence of such. In addition, we did not find any cases that rejected the use of the two-inch rule in situations involving R.C. 5321.04. In fact, the idea has not been discussed, as far as we can tell. Thus, while a statutory violation means that a landlord is negligent per se, we can only conclude that where a defect is so insubstantial, the landowner has simply failed to violate the statute, i.e., the premises is not in an unsafe condition. As a result, the landlord cannot be held liable under the LTA. The trial court, therefore, correctly granted summary judgment to Westmont based on the fact that the defect in the sidewalk was insubstantial as a matter of law.

{¶ 61} Based on the preceding discussion, Dabe's assignment of error is overruled.

### III. Conclusion

{¶ 62} Dabe's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

John A. Smalley
Heather R. Zilka
Nicholas S. Bobb
Hon. Douglas M. Rastatter